394 So.2d 183 (1981)
David LOGIN, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-1551.
District Court of Appeal of Florida, Third District.
February 17, 1981.
*185 Stephen K. Johnson and Jon R. Phillips, Gainesville, for appellant.
Jim Smith, Atty. Gen. and Steven L. Bolotin, Asst. Atty. Gen., for appellee.
Before HUBBART, C.J., and NESBITT and PEARSON, DANIEL S., JJ.
HUBBART, Chief Judge.
The central question presented for review by this appeal is whether a "seizure" of the person takes place within the meaning of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution when a police officer approaches an individual, identifies himself through proper police credentials, and begins to ask questions of the individual. We hold that such conduct, without more, does not constitute a "seizure" of the person within the meaning of the above constitutional provisions. We further conclude that: (a) the plain sight observations made by the police during their pre-detention contact with the defendant in this case constituted probable cause for the defendant's subsequent arrest; and (b) the trial court properly denied the defendant's motion to suppress the evidence seized incident to the defendant's arrest. We, accordingly, affirm the judgment of conviction and sentence from which this appeal is taken.

I
The facts pertaining to the instant search and seizure are as follows. On January 11, 1978, at 5:25 p.m., Detectives William Johnson and Miguel Magdalena of the Dade County Public Safety Department were assigned to a special airport narcotics detection unit at the Miami International Airport. They were at that time monitoring passengers boarding early evening flights to California. They were in plain clothes and did not visibly display any weapons. Their attention was directed to the defendant David Login as he was standing in line at the National Airlines ticket counter. The defendant was, in the officer's opinion, acting abnormally nervous, looking around at the faces of the people near him very closely. The defendant was also carrying a hemp-woven carry-or bag and had no other luggage. When he reached the ticket counter, the defendant took a large amount of cash from his pocket and paid for the ticket in cash. The defendant then started for concourse F where the gates to National's Los Angeles flights were located. The police detectives followed.
We now come to the crucial facts of the police encounter with the defendant. Detective Johnson walked up alongside the defendant while the latter was en route to concourse F, showed the defendant his badge and identification card, and said, "I am a narcotics officer with the sheriff's office and I would like to talk to you; do you have a minute?" The defendant stopped and relied, "Yes." At the precise moment after the defendant had come to a complete stop and police questioning began, Detective Johnson noticed two rings of white residue, one around each nostril of the defendant's nose. Based on his training and experience, Detective Johnson immediately recognized this white residue to be cocaine. In addition, he noticed the defendant's eyes were glassy, a condition consistent with use of cocaine. These factors, plus the defendant's nervousness, led Detective Johnson to believe that the defendant was under the influence of cocaine. In the meantime, Detective Magdalena joined Detective Johnson on the concourse at some point shortly after the defendant had stopped.
At this time, Detective Johnson asked to see the defendant's identification and plane ticket. The defendant responded by going through his coat pockets, which appeared to be stuffed to capacity, during which time Detective Johnson caught a fleeting glimpse of a plastic bag containing a white substance which appeared to be cocaine. The defendant stated that he did not have any identification, but did produce for police inspection a one-way plane ticket to Los Angeles in the name of "S. Welsh." During the entire time the defendant was looking for identification, his hands were shaking and he was slowly inching backwards away from the detectives.
*186 Detective Johnson then asked the defendant to step into the police office at the airport which was located a few feet away. The defendant complied and went with the detectives to a large storage closet area set aside for police use. Once inside, Detective Johnson asked the defendant what he had inside his pockets. The defendant replied that he had nothing. Detective Johnson then formally placed the defendant under arrest for possession of cocaine. The defendant thereupon attempted to flee and had to be physically subdued by the officers. The police then searched the defendant's person and seized a large quantity of cocaine contained in plastic bags in all of the pockets of the defendant's jacket as well as the cowboy boots the defendant was wearing. The police also searched the defendant's carry-on bag and seized an additional quantity of cocaine.
The defendant was subsequently charged by information in several counts with a series of offenses, including a count for unlawful possession of cocaine with intent to sell [§ 893.13(1)(a) 1 Fla. Stat. (1979)], in the Circuit Court for the Eleventh Judicial Circuit of Florida. The defendant filed a pre-trial motion to suppress the above cocaine seized from him by the police which, in fact, formed the basis of the above criminal charge against him. The trial court heard and denied the motion on the basis that the police observation of the cocaine residue on the defendant's nose took place prior to any stop of the defendant, that this observation constituted probable cause under the circumstances to arrest the defendant, and that the search herein was incident to a valid arrest of the defendant.
The defendant thereupon entered a nolo contendere plea to the charge of unlawful possession of cocaine with intent to sell, specifically reserving for appellate review the trial court's denial of the motion to suppress; the state nolle prossed the other counts in the information. The trial court accepted the defendant's nolo contendere plea as conditioned above, adjudicated the defendant guilty as charged, and sentenced the defendant to five years in the state penitentiary.
The defendant appeals, asserting as error the denial of the motion to suppress. We have jurisdiction to entertain this appeal and to consider the defendant's sole point on appeal. Brown v. State, 376 So.2d 382 (Fla. 1979); State v. Ashby, 245 So.2d 225 (Fla. 1971); § 924.06(1)(a), Fla. Stat. (1979).

II
The law is well-settled that a search and seizure conducted without benefit of a search warrant, as here, is presumptively unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution. See e.g. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Hornblower v. State, 351 So.2d 716 (Fla. 1977); Taylor v. State, 355 So.2d 180 (Fla. 3d DCA), cert. denied, 361 So.2d 835 (Fla. 1978). There are certain exceptions, however, to this general rule requiring search warrants. One of those exceptions is that the police may conduct a warrantless search and seizure incident to a valid arrest of the defendant. See e.g. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 24 L.Ed.2d 685 (1969); State v. Gustafson, 258 So.2d 1 (Fla. 1972), aff'd., 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). It was this exception that the trial court relied on in sustaining the reasonableness of the warrantless search in the instant case.
Crucial to invoking the above exception to sustain the instant search, in our view, is the trial court's determination below that the defendant had not been seized by the police within the meaning of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution when Detective Johnson observed the cocaine residue around the defendant's nostrils. If this be correct, the residue was lawfully observed in plain view during a pre-detention encounter which, in turn, gave the police probable cause under the circumstances to arrest the defendant and conduct a search incident thereto.[1]See *187 e.g. State v. Ashby, 245 So.2d 225 (Fla. 1971); State v. Parnell, 221 So.2d 129, 131-133 (Fla. 1969); Fletcher v. State, 65 So.2d 845 (Fla. 1953). On the other hand, if the trial court was incorrect on this issue and the defendant was temporarily seized when the cocaine residue was observed, then, as the trial court itself recognized, that seizure was unreasonable as based on mere suspicion, Reid v. Georgia, ___ U.S. ___, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), which, in turn, made the plain view cocaine observation unlawful and the subsequent arrest and incidental search of the defendant, based thereon, unreasonable. See e.g. Porchay v. State, 321 So.2d 439 (Fla. 1st DCA 1975). Our inquiry must center, then, on whether the police officers' initial encounter with the defendant on the airport concourse amounted to a "seizure" in the constitutional sense.

A
The Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution guarantee to the people the right "to be secure in their persons ... against unreasonable ... seizures" by government agents. United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975); State v. Ramos, 378 So.2d 1294, 1297 (Fla. 3d DCA 1979). A person has been seized within the meaning of the above constitutional provisions "whenever a police officer accosts an individual and restrains his freedom to walk away...." Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968); State v. Ramos, 378 So.2d 1294, 1297 (Fla. 3d DCA 1979). Not every encounter, however, between police and citizen amounts to such a seizure. Indeed, it has been recognized that police-citizen encounters are incredibly rich in diversity and that most do not rise to the level of police seizures.[2] "Only when the [police] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Terry v. Ohio, 392 U.S. at 20 n. 16, 88 S.Ct. at 1879 n. 16. In each case, the crucial consideration is whether the person approached by the police was "under a reasonable impression that he [was] not free to leave the officer's presence" and in determining whether such a reasonable impression existed, "the test must be `what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes.'" State v. Frost, 374 So.2d 593, 597 (Fla. 3d DCA 1979), following United States v. Wylie, 569 F.2d 62 *188 (D.C. Cir.1977), cert. denied, 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978).

B
In the instant case, Detective Johnson approached alongside the defendant as the latter was walking on the airport concourse at the Miami International Airport, displayed his badge and identification, and said to the defendant, "I am a narcotics officer with the sheriff's office and I would like to talk to you; do you have a minute?" The defendant replied, "Yes" and stopped. At that precise moment, after the defendant had stopped and police questioning began, the cocaine residue around the defendant's nostrils was observed by the police. A short period of police inquiry ensued during which time the defendant surrendered his plane ticket, which the police apparently retained. The police then, in effect, ordered the defendant to a large closet storage area nearby which had been set aside for police use at the airport. The police, once inside this room, then formally arrested the defendant and searched him.
Our decision in State v. Frost, 374 So.2d 593 (Fla. 3d DCA 1979), directly controls here as the defendant was not temporarily seized within the meaning of the applicable constitutional provisions until the police, as in Frost, obtained possession of the defendant's plane ticket and retained it during their questioning of the defendant; and the arrest of the defendant did not take place, in accord with Royer v. State, 389 So.2d 1007, 1015-1020 (Fla. 3d DCA 1980), until the police, in effect, ordered the defendant to their small interrogation room. As such, the cocaine residue observation by the police made prior to the police retention of the defendant's plane ticket took place during a pre-detention encounter with the defendant and was therefore lawfully made. This observation, in turn, together with the other circumstances herein, gave the police probable cause to arrest the defendant and conduct a warrantless search incidental thereto. State v. Gustafson, 258 So.2d 1 (Fla. 1972), aff'd, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); Fletcher v. State, 65 So.2d 845 (Fla. 1953); §§ 901.15(3), 901.21(1), Fla. Stat. (1979).

1
The defendant urges, however, that the question left open in Frost directly faces us in this case, namely, whether to adopt the rule that "a Fourth Amendment stop occurs as soon as [police] officers initially approach an individual, identify themselves, and begin to question him." State v. Frost, 374 So.2d at 597. It is urged that under this rule the defendant was temporarily seized when Detective Johnson approached the defendant, identified himself and said he wanted to talk to the defendant, as police questioning immediately followed. We agree that such would be the result in this case if the instant rule were adopted in this jurisdiction, but upon further reflection, we must decline to adopt the rule.
It is true that initially we were attracted to the reasoning of those decisions which appear to follow such a rule, State v. Frost, 374 So.2d at 598, as the rule certainly has the advantage of clarity, a not inconsiderable advantage in an area of law as murky and in flux as search and seizure law is. Moreover, if one adds additional coercive factors to the rule, perhaps unspoken in the above decisions  such as the use of police language which in tone and content bespeak an order to stop, particularly when employed during a fast moving criminal investigation on the street  one can hardly quarrel with the result which the rule produces. On balance, however, we must nonetheless reject the rule as being overbroad, containing, as it does, insufficient coercive factors to amount, without more, to a seizure of the person. Indeed, application of such a rule would cover a multitude of police-citizen street encounters which in no way approach a police seizure of the person, such as police questioning of a probable witness to a crime or police inquiries directed to a stranded motorist in need of assistance. To label all police encounters with the public as seizures when accompanied by questioning, no matter how cordial, would tremendously impede the police in *189 the effective performance of both their criminal investigation and community assistance functions as each such contact would require a showing of founded suspicion, an impossible standard to meet in most cases. We cannot accept this result. Moreover, it should be clear beyond doubt that in such encounters no reasonable person, innocent of any crime, would be under the impression that he was not free to leave the officer's presence.
In this connection, we agree entirely with Mr. Justice White in his concurring opinion in Terry v. Ohio, 392 U.S. at 34, 88 S.Ct. at 1886:
"There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way."
This position, as well as the result we reach herein, finds further support in two recent decisions of the Fourth District Court of Appeal, State v. Grant, 392 So.2d 1362 (Fla. 4th DCA 1981); State v. Rawlings, 391 So.2d 269 (Fla. 4th DCA 1980) as well as similar decisions from other jurisdictions. See e.g. Coates v. United States, 413 F.2d 371 (D.C. Cir.1969); State v. Tsukiyama, 56 Hawaii 8, 525 P.2d 1099 (1974); United States v. Burell, 286 A.2d 845 (D.C.App. 1972).

2
The defendant further urges that Detective Johnson's actions and language employed in initially approaching the defendant on the airport concourse in this case were such that any reasonable person, innocent of any crime, would have thought that he had no choice but to stop and talk to the police and was not free to leave the officer's presence. We cannot agree. Detective Johnson merely walked up to the defendant, properly displayed his police credentials, and stated a desire to speak with the defendant, clearly giving the said defendant an option to refuse by inquiring whether the defendant "had a minute." It is true that a reasonable person, innocent of any crime, might have felt, out of a sense of politeness and civic duty, that he ought to cooperate with the officer and agree to the officer's request which, in fact, the defendant did. That is a far cry, however, from concluding, as the defendant urges, that he had no choice in the matter and was compelled to stop and answer questions whether he liked it or not. We cannot so conclude as, in our view, such common social amenities and pressures do not and cannot in themselves amount to an official restraint on personal liberty. State v. Grant, 392 So.2d 1362 (Fla. 4th DCA 1981). For the foregoing reasons, the trial court correctly denied the defendant's motion to suppress.
Affirmed.
NOTES
[1] No contention has been made by the defendant, either in the trial court or in this court, that the search of the defendant's hemp-woven, carry-on bag was not properly incidental to the defendant's arrest and that a search warrant was constitutionally required in order for the police to search this bag. Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); see United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). The issue is, therefore not properly before us for appellate review and we express no opinion thereon. Compare State v. Southwell, 369 So.2d 371, 373 (Fla. 1st DCA 1979).
[2] "Street encounters between citizens and police officers are incredibly rich in diversity. They range from wholly friendly exchanges of pleasantries or mutually useful information to hostile confrontations of armed men involving arrests, or injuries or loss of life. Moreover, hostile confrontations are not all of a piece. Some of them begin in a friendly enough manner, only to take a different turn upon the injection of some unexpected element into the conversation. Encounters are initiated by the police for a wide variety of purposes, some of which are wholly unrelated to a desire to prosecute for crime." Terry v. Ohio, 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889 (1968). "I recognize however, that instances will arise where there will be legitimate contact between a police officer and a citizen, not based upon `founded suspicion' or `probable cause,' which may result in the subsequent arrest of the citizen for a crime detected by the police officer as a result of the legitimate contact. For example, a police officer in the performance of his duty may stop to assist a motorist who has a flat tire or may stop a woman bicyclist at night to warn her of the presence of a rapist in the area. If during these legitimate encounters with the motorist or the woman, the police officer observes stolen stereo equipment in the motorist's automobile or smells the odor of marijuana emanating from the woman and sees a plastic bag containing what appears to be marijuana protruding from her pocket, he may lawfully seize the evidence." Mullins v. State, 366 So.2d 1162, 1163 (Fla. 1978) (Alderman, J., concurring).