465 So.2d 1339 (1985)
Lothar SOMMER a/K/a Randall Flamme, Appellant,
v.
STATE of Florida, Appellee.
No. 83-277.
District Court of Appeal of Florida, Fifth District.
February 21, 1985.
Rehearing Denied March 29, 1985.
James B. Gibson, Public Defender, and David A. Henson, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
DAUKSCH, Judge.
This is an appeal from a judgment in a drug possession case. The issue on appeal is the propriety of the court's denial of a motion to suppress the drug evidence. We affirm.
At the time Officer Long came on duty for his day shift as a police patrolman he was told there was a "suspicious" vehicle parked on the beach and earlier that morning other officers had asked the driver to leave with the vehicle. When Long came upon the legally parked vehicle at 7:30 that morning he found two males asleep in the car. The city has an ordinance against sleeping on the beach so the officer "checked out the subjects." Appellant *1340 gave his name as Randall Flamme and told Long his date of birth. He had no identification. Upon running his name "through the computers" the officer determined appellant was wanted in Ft. Lauderdale on a warrant for a misdemeanor offense  driving with no driver's license. Officer Long arrested appellant on the warrant and put him into the police car. Appellant's companion did not have a valid driver's license so the officer impounded the car for safekeeping. The officer did not offer appellant an opportunity to find an alternative to the police impoundment of the vehicle.
Before the car was towed away, the officer searched it to inventory its contents. The search revealed, in addition to cameras, telephoto lenses, a suitcase containing ten to twelve motel keys, two baggies of substances which later proved to be marijuana, LSD, petazocine and phentermine. The baggies were found in the car's glove-box. Appellant was charged in four counts with having unlawfully possessed these drugs.
Appellant raises two grounds on appeal. One, that the court erred in denying his motion to suppress because the officer had no right to initially stop or question or detain him. Two, that before impounding his vehicle and inventorying it the officer should have offered to allow him an alternative method of safekeeping.
As to the first point on appeal we believe this case is controlled by Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. den. 104 S.Ct. 1330, 79 L.Ed.2d 725 (Fla. 1984).
In Lightbourne it was said by our supreme court that:
The defendant argues that his detention by Officer McGowan prior to his arrest on the concealed weapons charge constituted an illegal stop under the rationale of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As a result, defendant argues, all items seized as a result of the "illegal" stop should be suppressed from evidence as "fruits of the poisonous tree" from which they issued. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We disagree.
We find, under the circumstances of this case, that no unlawful intrusion occurred when Officer McGowan approached Mr. Lightbourne for the purpose of investigating a suspicious car called to his attention by a concerned citizen of the community. Although defendant is correct in his assertion that the officers had no probable cause or well-founded suspicion that the defendant was about to commit or had committed any crime, under the instant facts such a showing was not necessary. The officers were responding to a call and were not acting on their own "hunch" as in the "roving patrol" cases.
In Terry, the Supreme Court noted that "[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the street." 392 U.S. at 34, 88 S.Ct. at 1886 (White, J., concurring). This is so even under normal conditions with officers having no concrete suspicion on which to rely. Of course in such situations a person would be under no duty to remain, and could continue on his way if he chose to do so. That person, instructed the Terry Court, "absent special circumstances may not be detained or frisked but may refuse to cooperate and go on his way." Id. (Emphasis added.)
There exists, therefore, a distinction between an intrusion by police amounting to a "seizure" of the person and an encounter which intrudes upon no constitutionally protected interest. Terry v. Ohio; United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); United States v. Elmore, 595 F.2d 1036 (5th Cir. 1979), cert. denied, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980).
Officer McGowan's investigation of the suspicious vehicle in this case does not rise to the level of an unconstitutional stop or seizure. Officer McGowan simply approached the parked car, asked defendant a few simple questions as to *1341 the reason for his presence there, his current address, and then ran a routine check on defendant's car and identification. Surely the average, reasonable person, under similar circumstances, would not find the officer's actions unduly harsh. There is nothing in the record that would indicate that prior to defendant voluntarily relinquishing his driver's license to Officer McGowan he was not free to express an alternative wish to go on his way. The Court need not consider here the question of what would happen if a citizen, asked for identification under somewhat similar conditions, and who upon declining to surrender such identification, was placed under arrest. The implication is that in reality, rather than theory, one who has been so confronted by an officer is not free to leave.
The Supreme Court has repeatedly acknowledged the need for police questioning as a tool for effective enforcement of our criminal laws. United States v. Mendenhall. Florida courts have recognized that, in this context, law enforcement officers can indeed initiate contacts with citizens without creating a stop and seizure situation.
In State v. Rawlings, 391 So.2d 269 (Fla. 4th DCA), petition denied, 399 So.2d 1145 (Fla. 1981), an individual heard some shots outside his home and, upon investigating saw someone outside, but could not identify him. He called the police who arrived on the scene to find the defendant and a woman on the street in the vicinity. The officer engaged the defendant in conversation and while doing so, noticed the outline of a gun in his back pocket. The officer then conducted a pat-down search which revealed a .25 caliber pistol. The court in Rawlings held that the police in that case did not have a founded suspicion to justify a detention of the defendant. However, while the court agreed that there was insufficient evidence of an articulable basis of founded suspicion presented at the hearing on the motion to suppress, it nevertheless found that the police activity in this case did not constitute a detention of the defendant. Thus no showing of founded suspicion was required to justify the encounter. The court went on to add:
A mere contact between a citizen and a police officer which evokes voluntary cooperation on the part of the citizen is not a `seizure' within the meaning of the Fourth Amendment. If, during a lawful and extremely temporary encounter between a police officer and a citizen, probable cause is formulated to believe that the citizen is carrying a dangerous weapon, a frisk of that citizen's person is entirely justified to insure the safety of the police officer.

Id. at 270.
In Carter v. State, 370 So.2d 1181 (Fla. 4th DCA), cert. denied, 378 So.2d 343 (Fla. 1979), the court, citing Mullins v. State, 366 So.2d 1162 (Fla. 1978), cert. denied, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979), recognized that there would be instances where legitimate contact between police officers and citizens, not based upon founded suspicion of criminal activity or probable cause, might result in the subsequent arrest of the citizen for a crime detected by the officer as a result of the legitimate contact.
In the case sub judice we find that no "stop" or "seizure" of the defendant within the meaning of Terry and its progeny occurred prior to his removal from the car by Officer McGowan to conduct the pat-down search. Officer McGowan was simply performing his duty as a police officer to investigate a citizen complaint, motivated by a concern that the defendant might be in need of assistance. Once on the scene, the officer acted prudently for the protection of the safety of the concerned citizen and his neighbors in the community when he proceeded to check out the defendant's car and identification.
Given the fact that the initial contact was justified, the ultimate pat-down was also justified in that defendant's furtive movements and nervous appearance *1342 when observed by Officer McGowan formulated a reasonable ground to believe that the defendant was armed and potentially dangerous. United States v. Tharpe, 526 F.2d 326 (5th Cir.1976); Jackson v. State, 403 So.2d 1116 (Fla. 5th DCA 1981). The officer in this case acted with prudence and was entitled to execute the limited search for weapons which might be used to assault him. Terry v. Ohio.

Based on the foregoing, we hold the officer's initial contact with the defendant to have been legitimately initiated for the purpose of investigating the citizen's call regarding a suspicious vehicle. We further hold that such contact as is evidenced by these facts did not constitute a stop or seizure of the defendant under Terry principles. Finally, the objectively discernible actions of the defendant provided Officer McGowan with a reasonable ground for searching the defendant for dangerous weapons. As such, we therefore hold that the gun and subsequent items found as a result of the search of the defendant's car incident to his lawful arrest on the weapon's charge, were correctly admitted into evidence by the trial court, and the court did not err in denying defendant's motion to suppress said items.
In Immigration and Naturalization Service v. Delgado, ___ U.S. ___, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984), it was said by the United States Supreme Court:
Although we have yet to rule directly on whether mere questioning of an individual by a police official, without more, can amount to a seizure under the Fourth Amendment, our recent decision in Royer, supra, plainly implies that interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure. In Royer, when DEA agents found that the respondent matched a drug courier profile, the agents approached the defendant and asked him for his airplane ticket and driver's license, which the agents then examined. A majority of the Court believed that the request and examination of the documents was "permissible in themselves." Id., (plurality opinion), see Id., at 495, n. 3, 103 S.Ct., at 1337-1338, n. 3 (opinion of REHNQUIST, J.). In contrast a much different situation prevailed in Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), when two policemen physically detained the defendant to determine his identity, after the defendant refused the officers' request to identify himself. The Court held that absent some reasonable suspicion of misconduct, the detention of the defendant to determine his identity violated the defendant's Fourth Amendment right to be free from an unreasonable seizure. Id., at 52, 99 S.Ct. at 2641.
What is apparent from Royer and Brown is that police questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. Cf. Schneckloth v. Bustamonte, 412 U.S. 218, 231-234, 93 S.Ct. 2041, 2049-2051, 36 L.Ed.2d 854 (1973). Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment. But if the persons (sic) refuses to answer and the police take additional steps  such as those taken in Brown  to obtain an answer, then the Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure. United States v. Mendenhall, supra, 446 U.S., at 554, 100 S.Ct., at 1877; see Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).
In Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983), it was similarly said:

*1343 Second, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. See Dunaway v. New York, 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1979); Terry v. Ohio, 392 U.S. 1, 31, 32-33, 88 S.Ct. 1868, 1885-1886, 20 L.Ed.2d 889 (1968) (Harlan, J., concurring); id., at 34, 88 S.Ct., at 1886 (WHITE, J., concurring). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. United States v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. Terry v. Ohio, supra, 392 U.S. at 32-33, 88 S.Ct., at 1885-1886 (Harlan, J., concurring); id., at 34, 88 S.Ct., at 1886 (WHITE, J., concurring). He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. United States v. Mendenhall, supra, 446 U.S., at 556, 100 S.Ct., at 1878 (opinion of Stewart, J.). If there is no detention  no seizure within the meaning of the Fourth Amendment  then no constitutional rights have been infringed.
Police officers and other citizens, too, can ask questions of anyone on the street. Anyone questioned can refuse to answer. Just because a person willingly answers a question and the answer leads to the policeman finding reason to arrest does not mean the arrest is vitiated. When this officer determined a warrant was extant for appellant's arrest he was duty-bound to arrest and to search. Policemen can question, as anybody can, suspicious as well as non-suspicious persons. It is the answers which may lead to the problem, not the questioning. See also Davis v. State, 461 So.2d 1361 (Fla. 2d DCA 1985).
As to the second point we find a great deal more difficulty. Under the dictates of Miller v. State, 403 So.2d 1307 (Fla. 1981) a strong argument is made here that the officer should have offered appellant the opportunity to have the vehicle secured for safekeeping, rather than having it inventoried and towed by the police. In Miller v. State, our supreme court held, under the authority of South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), that a police authority must give the owner or possessor of a vehicle which is going to be impounded, under circumstances similar to what we have here, the opportunity to seek a reasonable alternative for safekeeping. The Florida Supreme Court said:
In our opinion, if the primary purpose of impoundment and an inventory search is for security and protection of the vehicle contents, it necessarily follows that the owner or possessor who is reasonably available must be consulted concerning the impoundment.
403 So.2d at 1313 (emphasis supplied). Were this search to be upheld, it could hardly be upheld upon the impoundment and inventory basis because Miller would not permit it. See also Jones v. State, 345 So.2d 809 (Fla. 4th DCA 1977).
An appellate court should not overturn an order denying the suppression of evidence if any legal basis to sustain the trial court exists. See Combs v. State, 436 So.2d 93 (Fla. 1983); Robinson v. State, 393 So.2d 33 (Fla. 1st DCA 1981); Postell v. State, 383 So.2d 1159 (Fla. 3d DCA 1980). This principle is applicable to both issues on appeal, so even if the trial judge did use an errant basis to uphold the search in the first instance, which we do not concede, it is wholly proper for this court to uphold the ruling; the protestations of the dissent notwithstanding.
*1344 This search can be justified as a search incident to arrest. The fact that the search has been justified as an inventory search does not affect the validity of it. State v. Valdes, 423 So.2d 944 (Fla. 3d DCA 1982). The officer lawfully arrested appellant under the Ft. Lauderdale warrant and appellant was an occupant of the vehicle when he was arrested.
New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), reh. den., 453 U.S. 950, 102 S.Ct. 2860, 69 L.Ed.2d 768 (1981) is the seminal case. It holds "... that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. The court also held that the policeman may examine the contents of any containers found within the passenger compartment. See also Bond v. State, 431 So.2d 343 (Fla. 2d DCA 1983).
For the reasons outlined above, the order and judgment are affirmed.
AFFIRMED.
ORFINGER, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
I respectfully dissent on the grounds that a "stop" was initially involved in this case, as was conceded by all parties below as well as the trial judge, and the prosecutor failed to establish any reasonable justification for questioning or stopping appellant. Therefore, Sommer's subsequent arrest and the inventory search were invalid. U.S. CONST. amend. IV.
The record before us indicates the following. On June 23, 1982, at 7:30 a.m., Officer Long, a Daytona Beach Shores Police Officer, approached a gray Oldsmobile lawfully parked on the beach. Long testified at the suppression hearing that before going out on his shift that morning he was told the night shift reported an Oldsmobile of a "suspicious" nature parked on the beach which was ordered off.
Long saw appellant and a companion sleeping inside the car but saw nothing of an illegal or suspicious nature. Nevertheless, he began questioning appellant. After learning appellant's identity, Long found out he was wanted on an outstanding traffic warrant in Ft. Lauderdale and arrested him. The car was then impounded, and pursuant to an inventory search the illegal substances were found.[1]
The fourth amendment is implicated whenever a police officer "accosts an individual and restrains his freedom to walk away." Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 877, 20 L.Ed.2d 889 (1968). The majority opinion takes the view that the fourth amendment is not implicated in this case as there was no seizure effected within the meaning of that amendment when Officer Long accosted appellant. This is erroneous on both procedural and substantive grounds.
First and foremost, this issue was not raised by the state either at trial or on appeal. The state's position was always that this was a "stop" founded on reasonable suspicion. The appellant did not have an opportunity to argue this question or present evidence on it. Thus, we should not make a fact determination to justify the result in this case.
In O'Brien v. State, 454 So.2d 675 (Fla. 5th DCA 1984), this court held that it should refrain from gratuitously discussing issues not raised by the parties. This rule is even more appropriately applied in the instant case rather than in O'Brien, because the issue of whether a seizure has occurred, is, in the words of Justice Powell, "a difficult characterization of fact and law... ." Immigration and Naturalization Service v. Delgado, ___ U.S. ___, 104 S.Ct. 1758, 1765, 80 L.Ed.2d 247 (1984) (Powell, J., concurring).
In United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), a case cited by both the Florida *1345 Supreme Court and the United States Supreme Court in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) and Lightbourne v. State, 438 So.2d 380 (Fla. 1983), two cases heavily relied upon in the majority opinion, a plurality of Justices refused to consider this question precisely because it was not raised in the courts below. See 446 U.S. at 561, 100 S.Ct. at 1880 (Powell, J., concurring, joined by Burger, C.J., and Blackmun, J.). The plurality expressed at length its reasons for refusing to address the issue raised de novo on appeal:
Throughout the lower court proceedings in this case, the Government never questioned that the initial stop of Ms. Mendenhall was a "seizure" that required reasonable suspicion. Rather, the Government sought to justify the stop by arguing that Ms. Mendenhall's behavior had given rise to reasonable suspicion because it was consistent with portions of the so-called "drug courier profile," an informal amalgam of characteristics thought to be associated with persons carrying illegal drugs. Having failed to convince the Court of Appeals that the DEA agents had reasonable suspicion for the stop, the government seeks reversal here by arguing for the first time that no "seizure" occurred, an argument that Mr. Justice STEWART now accepts, thereby pretermitting the question whether there was reasonable suspicion to stop Ms. Mendenhall. Mr. Justice STEWART's [sic] opinion not only is inconsistent with our usual refusal to reverse judgments on grounds not raised below, but it also addresses a fact-bound question with a totality-of-circumstances assessment that is best left in the first instance to the trial court, particularly since the question was not litigated below and hence we cannot be sure is adequately addressed by the record before us.
Mr. Justice STEWART believes that a "seizure" within the meaning of the Fourth Amendment occurs when an individual's freedom of movement is restrained by means of physical force or a show of authority. Although it is undisputed that Ms. Mendenhall was not free to leave after the DEA agents stopped her and inspected her identification, App. 19, Mr. Justice STEWART concludes that she was not "seized" because he finds that, under the totality of the circumstances, a reasonable person would have believed that she was free to leave. While basing this finding on an alleged absence from the record of objective evidence indicating that Ms. Mendenhall was not free to ignore the officer's inquiries and continue on her way, Mr. Justice STEWART'S opinion brushes off the fact that this asserted evidentiary deficiency may be largely attributable to the fact that the "seizure" question was never raised below. In assessing what the record does reveal, the opinion discounts certain objective factors that would tend to support a "seizure" finding, while relying on contrary factors inconclusive even under its own illustrations of how a "seizure" may be established. Moreover, although Mr. Justice STEWART'S opinion purports to make its "seizure" finding turn on objective factors known to the person accosted, in distinguishing prior decisions holding that investigatory stops constitute "seizures," it does not rely on differences in the extent to which persons accosted could reasonably believe that they were free to leave. [Footnotes omitted].
446 U.S. at 567-570, 100 S.Ct. at 1884-1885.[2] Thus, it is my conclusion that we *1346 should restrict this opinion to the contentions raised by the parties.
An officer need not have probable cause (as in making an arrest) when he effects an investigatory stop. However, he is required to have a reasonable articulable suspicion "based upon objective facts, taking together rational inferences therefrom, that either the vehicle or any of its occupants is engaged in criminal activity." United States v. Poole, 718 F.2d 671, 674 (4th Cir.1983); see also United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); State v. Jones, 417 So.2d 788, 792 (Fla. 5th DCA 1982); State v. Rizo, 463 So.2d 1165 (Fla. 3rd DCA 1984). For example, the police officer in Davis v. State, 461 So.2d 1361 (Fla. 2d DCA 1985), did not "stop" the defendant until he had probable cause to think Davis was driving without a license.
The record in the instant case indicates that Officer Long knew only the following facts before he approached appellant's car:[3] (1) it was a gray Oldsmobile of a "suspicious nature";[4] (2) such a car had been parked that night on the beach and was asked to move once; (3) it was parked on the beach at 7:30 a.m.; (4) its occupants were sleeping. These objective facts, in my view, do not justify the slimmest suspicion that appellant was engaged in criminal activity. Nor is it possible to draw such an inference from these facts. Unfounded suspicions lacking objective facts constitute an insufficient basis upon which to question or detain an individual. Mullins v. State, 366 So.2d 1162 (Fla. 1978); Coladonato v. State, 348 So.2d 326 (Fla. 1977).[5] Where the stop is illegal, the evidence seized as a result of it must be suppressed. Mullins; Dilyerd v. State, 444 So.2d 577 (Fla. 5th DCA 1984); State v. Beja, 451 So.2d 882 (Fla. 4th DCA 1984).
The majority states that, as a general proposition, law enforcement authorities *1347 have the general perogative to acost any suspicious individual whom they suspect is involved in a crime.[6] In this case, the anti-sleeping on the beach ordinance was the only possible springboard for the "stop" which occurred in this case.[7] However, violation of this ordinance was clearly not the reason why the police officer stopped to make inquiry; nor was appellant arrested for this behavior.[8]
Had appellant been stopped or arrested for a violation of this ordinance, he would have had an opportunity to challenge its questionable constitutionality, State v. Walker, 444 So.2d 1137 (Fla. 2d DCA 1984), or even argue its applicability. As it is, we have a Mad Hatter's Tea Party where you cannot have more tea because you never had any to begin with. We should not create a rationalization which the arresting police officer, trial court, and appellate counsel did not rely upon, in establishing reasonable suspicion to stop, or probable cause to arrest. See White v. State, 458 So.2d 1150 (Fla. 1st DCA 1984).
NOTES
[1] §§ 893.13(1)(e) & (f), Fla. Stat. (1983).
[2] The majority errs in its analysis of the merits of the issue as well. As it correctly points out, "a person has been `seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

The majority mischaracterizes Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1330, 74 L.Ed.2d 1725 (1984) as being "indistinguishable" from the instant case. In Lightbourne, the officer was following up a tip given to him by a private citizen when he "asked defendant a few simple questions as to the reason for his presence there, his current address, and then ran a routine check on defendant's car and identification." Id. at 387. Unlike the instant case, the supreme court noted this was not a "roving patrol" or an officer acting on a "hunch," but rather was an investigation of a citizen's complaint. Id. at 388. "Once on the scene, the officer acted prudently for the protection of the safety of the concerned citizens and his neighbors in the community when he proceeded to check out the defendant's car and identification." Id. at 388. These circumstances are easily distinguishable from the instant case in which Officer Long's investigation had nothing to do with protecting the safety of others.
Further, in the instant case, Officer Long was indeed acting as a roving patrol, and, in fact, acquiesced in defense counsel's characterization of the encounter:
Q. It's my understanding you made a stop because he was suspicious and you detained him and questioned him because he was described as being suspicious; is that correct?
A. Yes.
It is not the type of questions and length of detention that determines whether a police-citizen contact implicates the fourth amendment, United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (detention for no more than a minute during which one or two questions regarding identification implicates fourth amendment), but the interference with the defendant's freedom that is determinative. Here, the sparse facts of this record as well as the officer's admission, indicate that appellant's freedom was objectively curtailed.
[3] Reasonable cause for a stop and frisk need not be based on an officer's personal observation. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 13 L.Ed.2d 612 (1972). Further, where there is at least minimal communication between officers, reviewing courts look to their collective knowledge in determining whether a stop is justified. United States v. Kreimes, 649 F.2d 1185 (5th Cir.1981); United States v. Martin, 636 F.2d 974 (5th Cir.1981).
[4] Although the car was labeled as being suspicious in nature by the Daytona Beach Shores Police Department, there are no facts in the record which support that conclusion by the department.
[5] Compare Dilyerd v. State, 444 So.2d 577 (Fla. 5th DCA 1984) (movement by a passenger in a car does not give rise to a founded suspicion) and State v. Beja, 451 So.2d 882 (Fla. 4th DCA 1984) (fact that car was parked in back of restaurant which had experienced "numerous" problems does not give rise to a founded suspicion of criminal activity) with Terry and State v. L.D.M., 420 So.2d 899 (Fla. 1st DCA 1982) (reasonable articulable suspicion was based on the objective facts of, time of day, the high rate of crime in the area where the stop occurred, the car parked with its lights off behind a salvage yard, and the observation of tires in the back of that car).
[6] On the contrary, at least one Supreme Court Justice believes it to be a violation of a person's fourth amendment rights to make it a crime to refuse to identify oneself to a police officer in the absence of reasonable suspicion. See Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 1861, 75 L.Ed.2d 903 (1983) (Brennan, J., concurring). See also Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Those cases must assume, therefore, that in the case where a police officer approaches and asks for identification, a "seizure" has taken place, making the fourth amendment applicable.
[7] VOLUSIA COUNTY ORDINANCE, CODE § 33-22(e) (1971).
[8] The record states the following:

Q. Officer, what time of day was it that you made contact with the Defendant?
A. Seven-thirty in the morning.
Q. What is the law of sleeping on the beach?
A. The law is between three and five-thirty. No parking of the vehicle on the beach between three and five-thirty.
Q. Three and five-thirty a.m.?
A. Yes, sir.
Q. So, he was lawfully parked on the beach at that time?
A. Yes, sir.
Q. It's my understanding you made a stop because he was suspicious and you detained him and questioned him because he was described as being suspicious; is that correct?
A. Yes.