543 So.2d 375 (1989)
The STATE of Florida, Appellant,
v.
Larry DAVIS, Appellee.
No. 88-2547.
District Court of Appeal of Florida, Third District.
May 16, 1989.
*376 Robert A. Butterworth, Atty. Gen., and Steven T. Scott and Jorge Espinosa, Asst. Attys. Gen., for appellant.
Bennett H. Brummer, Public Defender, and Elliot H. Scherker, Asst. Public Defender, for appellee.
Before HUBBART, BASKIN and COPE, JJ.
PER CURIAM.
This is an appeal from an order granting a motion to suppress evidence. The issue is whether the police obtained evidence as a result of an unlawful seizure of the defendant within the meaning of the fourth amendment. We find no infirmity in the procedure followed by the police and reverse.
In the present case a police officer was on patrol when he received a report of some suspicious activity in a particular neighborhood. No crime, however, had been reported at that time.
Proceeding to the area, the officer observed the defendant riding his bicycle from the driveway of a house out onto the street with a tote bag on the handlebars. The officer drove alongside the defendant and asked if he might speak with him for a minute. The defendant stopped and dismounted from the bicycle. The officer left the car and asked the defendant where he was going. The defendant gave some contradictory answers. The officer then asked the defendant if he could look inside the tote bag, at which point the defendant handed the tote bag to the officer. On looking inside the tote bag, the officer observed the name "Wilder," which was different from the defendant's name. When asked about the discrepancy, the defendant indicated that the tote bag belonged to his sister, and the contents had been salvaged by him from a garbage dumpster. The defendant was unable, however, to give a description of the contents of the bag to the officer.
At that point the officer called for backup, and two more officers arrived promptly. The backup officers inquired in the neighborhood and within fifteen minutes learned that the Wilder residence (the house the officer had seen the defendant riding away from) had been burglarized. The defendant was arrested.
The defense moved to suppress the evidence obtained by the officer, arguing that the encounter between the officer and the defendant was a seizure of the person of the defendant without probable cause, in violation of the Fourth Amendment. That being so, the defense urged that the information and objects obtained by the officer were fruits of an illegal search and seizure and must therefore be suppressed. The trial court agreed, concluding that the police officer's request that the defendant stop was inherently coercive in nature. The trial court concluded there had been an unlawful custodial interrogation in violation of the Fourth Amendment and suppressed the evidence.[1]
With deference to the trial judge, the motion to suppress should have been denied. It is now well settled that police may interact on a voluntary basis with citizens without transgressing the requirements of the Fourth Amendment. State v. Tarbox, 541 So.2d 1350 (Fla. 3d DCA 1989); Login v. State, 394 So.2d 183, 186-89 (Fla. 3d DCA 1981); see Terry v. Ohio, 392 U.S. 1, 34, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889, 913 (1968) (White, J., concurring) ("There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets."). The fact that the request is made by a uniformed police officer is not deemed to carry with it such coercion as would render an otherwise voluntary encounter involuntary. Rather, the inquiry is whether the encounter carries *377 with it specific indicia which would indicate to a reasonable person that he was under restraint forbidding him to leave. See, e.g., United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Jacobson v. State, 476 So.2d 1282 (Fla. 1985).
In the present case the encounter took place on the public roadside. The officer did not draw his weapon. The defendant was not handcuffed. Under the established case law, the encounter did not become non-consensual merely because a police officer had made the request.[2] Likewise, the agreement of the defendant to allow the officer to look in the tote bag, signified by the defendant's handing the tote bag to the officer, was voluntary within the decisional law under the Fourth Amendment. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); see Jacobson; Palmer v. State, 467 So.2d 1063 (Fla. 3d DCA 1985).
Upon observing that the tote bag contained a name which was not the defendant's, the officer had reasonable suspicion for an investigative "stop." See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); § 901.151, Fla. Stat. (1987). While the disparity in names alone was sufficient cause for investigation, in the present case that was enhanced by the inconsistent answers given by the defendant regarding his destination, and his inability to describe the contents of the tote bag. The investigative stop was followed promptly by confirmation that there had been a burglary at the Wilder household. Probable cause then existed to make the arrest.[3]
The order under review is therefore reversed.
NOTES
[1] COURT: "I am finding it was a stop as far as I am concerned... . You got a guy tooling down the street on his bicycle and a marked police unit pulling up beside him with an officer in uniform saying, may I speak with you for a moment. I don't think he [the defendant] is going to think that he [the officer] wants to take him bowling."
[2] Indeed, if the rule were otherwise, it is difficult to see how police officers could perform their duty. While in a colloquial sense the police officer had "stopped" the defendant, the fact that a citizen halts in order to engage in a consensual conversation with a policeman does not transform the encounter into an involuntary "stop" for Fourth Amendment purposes. Login v. State, 394 So.2d at 187-89.
[3] The question whether probable cause would have existed absent confirmation of the burglary is not before us.