579 So.2d 381 (1991)
William WOODSON, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1331.
District Court of Appeal of Florida, Fifth District.
May 16, 1991.
James B. Gibson, Public Defender, and M.A. Lucas, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
DAUKSCH, Judge.
This is an appeal from a judgment and term of probation for possession of a firearm by a convicted felon. Appellant appeals the trial court's denial of his motion to suppress.
Deputy Sheriff Angelo Chiota testified at the suppression hearing that on January 28, 1990 at approximately 8:45 a.m., he was dispatched to Malaga Street, a White and Hispanic neighborhood, in response to a call regarding two suspicious males sleeping in a gold Buick with out-of-state tags which was parked on the street. The caller reported that the car had been parked there for a great deal of time and that there had been a number of problems in the area. He was unaware of who had placed the call.
When he arrived in the area, Chiota saw Deputy Corporal Regan driving northbound on Malaga Street. Regan advised him by radio that he had seen two males walking away from the Buick. When Chiota first saw the males, they were approximately seven or eight houses away from the Buick. Regan stopped his car and asked them to move out of the street and to walk in front of his car. Chiota got out of his car and the uniformed deputies asked the males if they could talk to them. They began inquiring as to what they were doing. Chiota testified that their intention at that point was to see if these males were the same males the caller had seen loitering and prowling around the neighborhood. When the deputies asked them if they had come from the car down the street, the males responded that they had. Regan advised them that he was going to pat them down and asked them if they had any weapons.
When Regan asked appellant if he had any weapons and if it would be all right to pat him down, appellant said that he had a gun in his right pocket and gave his permission for a pat down. At that point Chiota noticed that appellant was wearing *382 a large pair of oversized jeans with large pockets at least four or five inches deep which started below the knees. The right pocket appeared to be hanging down. Chiota noticed a bulge in the pocket. He patted the top of appellant's right pocket and felt a small hard object. He opened the pocket and found a .25 automatic and appellant was arrested.
Appellant testified that on the day in question, he and his friend were waiting for their girlfriends to come out of his girlfriend's aunt's house. Because they arrived early they had slept in their car. When they awoke they decided to stretch their legs by walking around the block. The officers asked them for identification upon approaching them. Appellant denied having consented to the pat down search.
Because the initial stop was unlawful, we reverse the trial court's denial of appellant's motion to suppress. Under the facts of this case the deputies' observation of appellant walking down the street at 8:45 in the morning with one or two other males in an alleged problem area did not give rise to a founded suspicion that they had committed, were committing or were about to commit a criminal offense. § 901.151(2), Fla. Stat. (1989). See Curry v. State, 570 So.2d 1071 (Fla. 5th DCA 1990); Jones v. State, 570 So.2d 433 (Fla. 5th DCA 1990); J.D. v. State, 568 So.2d 99 (Fla.3d DCA 1990). Section 901.151(5), Florida Statutes (1989) authorizes a police officer to conduct a weapons search if there is probable cause to believe that the person he has temporarily detained is armed. Doctor v. State, 573 So.2d 157 (Fla. 4th DCA 1991); L.D.P. v. State, 551 So.2d 1257 (Fla. 1st DCA 1989). Although there was consent for the deputy to search appellant in this case, the seizure of the weapon should have been suppressed as fruit of the poisonous tree because the stop was unlawful. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Kell v. State, 559 So.2d 731 (Fla. 4th DCA 1990).
REVERSED.
HARRIS, J., concurs specially with opinion.
COBB, J., dissents with opinion.
HARRIS, Judge, concurring specially:
I concur. Unlike the dissent, I do not find that the facts of this case indicate a mere police encounter.
Deputy Chiota testified as follows at the suppression hearing:
Q. What happened when you came into contact with them?
A. Corporal Regan had them move out of the street and had them walk in front of his car ...
Here the officers did not "merely approach a citizen to ask questions;" they assumed control over the citizens and directed their movements. Although Chiota testified that the officers then asked the detainees if they could talk to them, he does not give their response. In any event, once the officers had ordered Woodson and his companions to go to a certain location (and not just move out of the street as indicated by the dissent), a stop had occurred and not a mere encounter. Chiota's subsequent "clarification" did not alter his testimony  the officers directed the detainees where to go, not merely how to leave the street.
COBB, Judge, dissenting.
I respectfully dissent. Here, the conduct which eventually gave rise to the probable cause for arrest constituted a permissible police encounter, not an unlawful stop.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court noted that "there is nothing in the constitution which prevents a policeman from addressing questions to anyone on the street." This is especially true if officers are responding to a call and are not acting on their own as in "roving patrol" cases. This means that there is a distinction between an intrusion by police amounting to a "seizure" of the person and an encounter which intrudes upon no constitutionally protected interest.
*383 The supreme court has repeatedly acknowledged the need for police questioning as a tool for effective enforcement of our criminal laws and has recognized that, in this context, officers can initiate contacts with citizens without creating a stop and seizure situation. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). As stated in the case of J.C.W. v. State, 545 So.2d 306 (Fla. 1st DCA), review denied, 553 So.2d 1165 (Fla. 1989):
Where a police officer merely approaches a citizen to ask questions or to check for identification, and the contact between the police officer and citizen "evokes voluntary cooperation on the part of the citizen," the encounter is not a seizure within the meaning of the Fourth Amendment. State v. Rawlings, 391 So.2d 269 (Fla. 4th DCA), petition denied, 399 So.2d 1145 (Fla. 1981).
J.C.W. at 307. The J.C.W. court also held:
... a seizure occurs only when, by means of physical force or show of authority, one's freedom of movement has been restrained and when, in light of all the circumstances, it may be said that a reasonable person would have believed that he or she was not free to leave (cites omitted). (Emphasis supplied).
See also Jenkins v. State, 567 So.2d 528 (Fla. 5th DCA 1990) (Cobb, J., dissenting); State v. Davis, 543 So.2d 375 (Fla. 3d DCA 1989); State v. Tarbox, 541 So.2d 1350 (Fla. 3d DCA 1989); State v. Mendez, 540 So.2d 930 (Fla. 4th DCA 1989); Sommer v. State, 465 So.2d 1339 (Fla. 5th DCA 1985); Burke v. State, 465 So.2d 1337 (Fla. 5th DCA 1985); Madrict v. State, 409 So.2d 1152 (Fla. 1st DCA 1982); Login v. State, 394 So.2d 183, 187 (Fla. 3d DCA 1981); Carter v. State, 370 So.2d 1181 (Fla. 4th DCA), cert. denied, 378 So.2d 343 (Fla. 1979).
In J.C.W., the officer stopped the appellant who at that point in time had walked approximately 15 feet away. The court held that this "encounter" was not so "forceful," "intimidating" or "oppressive" that a reasonable person would have believed he was not free to leave, nor did the officer's stop include any of the "threatening" or "coercive" indicia of seizure outlined in Mendenhall. In Carter, approved and cited by the Florida Supreme Court in Lightbourne, the defendant was walking down a state road in the early morning. "The deputy stopped, got out, greeted Defendant, asked him to stand in front of the patrol car, and inquired of him what he was doing and where he was going." (Emphasis supplied). This was held to be an encounter, not a seizure.
In the instant case, the testimony was that Woodson and a companion were walking in the street when first seen by the two officers.[1] Deputy Chiota testified that Corporal Regan "had them move out of the street and had them walk in front of his car." This testimony was subsequently clarified by Chiota with the explanation that "Corporal Regan could not drive down the street without running them over. He stopped and had them move out of the road." A reasonable interpretation of this testimony is that Corporal Regan asked the men to move from in front of his car and out of the street. It was this request that the majority and concurring opinions characterize as an unlawful initial stop. As I see it, this was a reasonable request, unaccompanied by any threats or coercion, and Woodson voluntarily complied with it. No reasonable person in that circumstance at that point would have felt he was under police restraint and forbidden to leave the scene. See Mendenhall. The fact that the officers were in uniform and identified themselves as police officers did not transform an encounter into a seizure. State v. Walden, 464 So.2d 691 (Fla. 5th DCA 1985).
The testimony of Woodson himself in regard to his initial contact with Officer Regan lends no support whatsoever to the majority's interpretation that a peremptory *384 directive from the latter constituted a legal seizure of Woodson's person. On the contrary, Woodson simply testified that "two officers approached us, and one of them asked for identification."
Officer Chiota testified (and was believed by the finder of fact) that the two officers at the scene asked Woodson and his companion if they could talk to them, asked whether they were armed, and, when Woodson responded affirmatively, asked for and received permission to pat Woodson down, resulting in disclosure of the gun. The majority opinion has simply usurped the province of the fact finder by construing ambiguous testimony in a light most favorable to the appellant, and it is a strained construction at that. The state, as the prevailing party at the evidentiary hearing held on the appellant's motion to suppress, is entitled to the most favorable view of the evidence in support of its position. Medina v. State, 466 So.2d 1046 (Fla. 1985); Shapiro v. State, 390 So.2d 344 (Fla. 1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981); Sommer.
There was no seizure of the defendant, within the meaning of Terry and the fourth amendment, prior to permission being given for the pat-down. The majority and concurring opinions are in direct conflict with the Florida Supreme Court's opinion in Lightbourne.
I would affirm.
NOTES
[1] There is contradictory evidence in the record as to whether there were two or three men walking in the street. For purposes of this dissent, I have accepted the appellant's representation that there were two. In any event, this factor is immaterial to the result of this appeal.