COBB, Judge,
dissenting.
I respectfully dissent. Here, the conduct which eventually gave rise to the probable cause for arrest constituted a permissible police encounter, not an unlawful stop.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court noted that “there is nothing in the constitution which prevents a policeman from addressing questions to anyone on the street.” This is especially true if officers are responding to a call and are not acting on their own as in “roving patrol” cases. This means that there is a distinction between an intrusion by police amounting to a “seizure” of the person and an encounter which intrudes upon no constitutionally protected interest.
*383 The supreme court has repeatedly acknowledged the need for police questioning as a tool for effective enforcement of our criminal laws and has recognized that, in this context, officers can initiate contacts with citizens without creating a stop and seizure situation. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Lightbourne v. State, 438 So.2d 380 (Fla.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). As stated in the case of J.C.W. v. State, 545 So.2d 306 (Fla. 1st DCA), review denied, 553 So.2d 1165 (Fla.1989):
Where a police officer merely approaches a citizen to ask questions or to check for identification, and the contact between the police officer and citizen “evokes voluntary cooperation on the part of the citizen,” the encounter is not a seizure within the meaning of the Fourth Amendment. State v. Rawlings, 391 So.2d 269 (Fla. 4th DCA), petition denied, 399 So.2d 1145 (Fla.1981).
J. C. W. at 307. The J. C. W. court also held:
... a seizure occurs only when, by means of physical force or show of authority, one’s freedom of movement has been restrained and when, in light of all the circumstances, it may be said that a reasonable person would have believed that he or she was not free to leave (cites omitted). (Emphasis supplied).
See also Jenkins v. State, 567 So.2d 528 (Fla. 5th DCA 1990) (Cobb, J., dissenting); State v. Davis, 543 So.2d 375 (Fla. 3d DCA 1989); State v. Tarbox, 541 So.2d 1350 (Fla. 3d DCA 1989); State v. Mendez, 540 So.2d 930 (Fla. 4th DCA 1989); Sommer v. State, 465 So.2d 1339 (Fla. 5th DCA 1985); Burke v. State, 465 So.2d 1337 (Fla. 5th DCA 1985); Madrid v. State, 409 So.2d 1152 (Fla. 1st DCA 1982); Login v. State, 394 So.2d 183, 187 (Fla. 3d DCA 1981); Carter v. State, 370 So.2d 1181 (Fla. 4th DCA), cert. denied, 378 So.2d 343 (Fla.1979).
In J. C. W, the officer stopped the appellant who at that point in time had walked approximately 15 feet away. The court held that this “encounter”' was not so “forceful,” “intimidating” or “oppressive” that a reasonable person would have believed he was not free to leave, nor did the officer’s stop include any of the “threatening” or “coercive” indicia of seizure outlined in Mendenhall. In Carter, approved and cited by the Florida Supreme Court in Lightboume, the defendant was walking down a state road in the early morning. “The deputy stopped, got out, greeted Defendant, asked him to stand in front of the patrol car, and inquired of him what he was doing and where he was going.” (Emphasis supplied). This was held to be an encounter, not a seizure.
In the instant case, the testimony was that Woodson and a companion were walking in the street when first seen by the two officers.[1] Deputy Chiota testified that Corporal Regan “had them move out of the street and had them walk in front of his car.” This testimony was subsequently clarified by Chiota with the explanation that “Corporal Regan could not drive down the street without running them over. He stopped and had them move out of the road.” A reasonable interpretation of this testimony is that Corporal Regan asked the men to move from in front of his car and out of the street. It was this request that the majority and concurring opinions characterize as an unlawful initial stop. As I see it, this was a reasonable request, unaccompanied by any threats or coercion, and Woodson voluntarily complied with it. No reasonable person in that circumstance at that point would have felt he was under police restraint and forbidden to leave the scene. See Mendenhall. The fact that the officers were in uniform and identified themselves as police officers did not transform an encounter into a seizure. State v. Walden, 464 So.2d 691 (Fla. 5th DCA 1985).
The testimony of Woodson himself in regard to his initial contact with Officer Regan lends no support whatsoever to the majority’s interpretation that a peremptory *384 directive from the latter constituted a legal seizure of Woodson’s person. On the contrary, Woodson simply testified that “two officers approached us, and one of them asked for identification.”
Officer Chiota testified (and was believed by the finder of fact) that the two officers at the scene asked Woodson and his companion if they could talk to them, asked whether they were armed, and, when Woodson responded affirmatively, asked for and received permission to pat Wood-son down, resulting in disclosure of the gun. The majority opinion has simply usurped the province of the fact finder by construing ambiguous testimony in a light most favorable to the appellant, and it is a strained construction at that. The state, as the prevailing party at the evidentiary hearing held on the appellant’s motion to suppress, is entitled to the most favorable view of the evidence in support of its position. Medina v. State, 466 So.2d 1046 (Fla.1985); Shapiro v. State, 390 So.2d 344 (Fla.1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981); Sommer.
There was no seizure of the defendant, within the meaning of Terry and the fourth amendment, prior to permission being given for the pat-down. The majority and concurring opinions are in direct conflict with the Florida Supreme Court’s opinion in Lightboume.
I would affirm.

. There is contradictory evidence in the record as to whether there were two or three men walking in the street. For purposes of this dissent, I have accepted the appellant’s representation that there were two. In any event, this factor is immaterial to the result of this appeal.