370 So.2d 1181 (1979)
James CARTER, Appellant,
v.
STATE of Florida, Appellee.
No. 77-2242.
District Court of Appeal of Florida, Fourth District.
March 28, 1979.
*1182 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Asst. Public Defender, and Ilene Allison Brooks, Legal Intern, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Charles A. Stampelos, Asst. Atty. Gen., West Palm Beach, for appellee.
LEFFLER, KENNETH M., Associate Judge.
Defendant Carter was adjudicated guilty after he entered a plea of nolo contendere to charges of battery and carrying a concealed firearm. He preserved his right to appeal the trial court's denial of his motion to suppress evidence he contends was seized as a result of an illegal search of his person.
On June 12, 1977, at approximately five o'clock in the morning, a Palm Beach County Sheriff's Deputy Batista was enroute to answer a call when he passed a lone man (Defendant Carter) walking east along State Road 80 about 12 miles east of Belle Glade. On returning to Belle Glade after responding to that call the deputy again noticed the same man still walking east along the highway in this area of the county where there are farms and ranches, very few houses, and no street lights. Thinking it unusual for someone to be walking along that lonely stretch of road 30 miles from West Palm Beach at that time of morning, and that the man might be stranded with his car up the road and in need of help, the deputy stopped, got out, greeted Defendant, asked him to stand in front of the patrol car, and inquired of him what he was doing and where he was going (his answer to which was Belle Glade, opposite the direction he was headed). With Defendant illuminated by the headlights and spotlight of the patrol car, the deputy glanced down at Defendant's waistline, and noticed a bulge in his right front pocket causing it to be weighted down. At the same time, while standing next to Defendant, the deputy tapped the bulge with the back of his hand and felt it was metal or something hard; turning to "look sort of" in the pocket, he could see "the grips" of a gun. Asked then what was in his pocket, Defendant said, "Ah, well, I'm going to tell you the truth. I'm on the run, because I just shot a man in Belle Glade." Thereupon the deputy removed the gun from Defendant's pocket and arrested him.
*1183 The Defendant has urged on appeal that we adopt the law applied in Vollmer v. State, 337 So.2d 1024 (Fla. 2d DCA 1976) which our Supreme Court has reviewed and approved on conflict certiorari in Mullins v. State, 366 So.2d 1162 (Fla., 1978). Vollmer (a pedestrian walking a city street at 3:00 A.M.) and Mullins (a bicyclist riding slowly through a residential area in the very early morning hours) were stopped, arrested and searched on nothing more than the arresting officer's bare suspicion each was involved in illegal activity. Since the initial stop and arrest in each case was unlawful in each instance, the search which followed was necessarily invalid since a warrantless search is permissible only as an incident to a lawful arrest.
While noting some similarities of fact, Vollmer and Mullins are distinguishable from the case sub judice. Here, if we are to believe the arresting officer, he did not stop the Defendant for the purpose of arresting him, but for the purpose of offering him any assistance he might need or wish. And, the search of the Defendant, preceding rather than following his arrest, was limited in its scope to a single tap of and glance into the pocket for the purpose of determining if the Defendant was armed.
Justice Alderman, in his concurring opinion in the Mullins case, supra, recognizes that there are instances which may arise where legitimate contact between a police officer and a citizen may result in the citizen's arrest for a crime detected by the officer as a result of such contact. We view Deputy Batista's contact with and arrest of the Defendant as an example of the type of contact to which Justice Alderman alluded. In doing so, we accept as plausible the officer's explanation for stopping the Defendant. We detect nothing illegal or improper in the officer's actions. The officer was doing nothing more than the general public has the right to (and does) expect of its policemen in the process of their normal patrol, surveillance and investigatory duties. See State v. Price, 363 So.2d 1102 (Fla. 2d DCA 1978).
In denying the Defendant's motion to suppress, the trial court found from testimony of the deputy that the "... original stop (of the defendant) was reasonable, and (the deputy) stopped to render assistance to someone who may have been in need of it...." The ruling of the trial court on a motion to suppress, when it comes to the reviewing court, is clothed with the presumption of correctness, and the reviewing court will interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustain the trial court's ruling. McNamara v. State, 357 So.2d 410, 412 (Fla. 1978). We accept the trial court's findings and ruling.
The McNamara case is the latest of a relatively large number of cases in Florida dealing with searches for the limited purpose of determining whether a person with a pocket, waistband and other clothing bulge is armed. Thomas v. State, 250 So.2d 15 (Fla. 1st DCA 1971); State v. Woodard, 280 So.2d 700 (Fla. 2d DCA 1973); Williams v. State, 294 So.2d 37 (Fla. 3d DCA 1974); State v. Francois, 355 So.2d 127 (Fla. 3d DCA 1978); Phillips v. State, 360 So.2d 1310 (Fla. 1st DCA 1978). Whether considered in conjunction with Florida Statutes, Section 901.151 (Florida Stop and Frisk Law) or compared with the principles set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), all Florida cases have been decided against those searched. The applicable test, as gleaned from McNamara, is whether, from the totality of the circumstances present, an officer has probable cause, or reasonable ground under the circumstances of any encounter with a person, to believe that person to be armed and dangerous. If he does, a reasonably limited search of the person may be made for the purpose of neutralizing the danger and the fruits of such search are admissible in evidence. We think the test has been met in the case sub judice.
Denial of the Defendant's motion to suppress and judgment of the trial court is hereby affirmed.
AFFIRMED.
CROSS and DAUKSCH, JJ., concur.