495 So.2d 852 (1986)
Sylvester H. GRAHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 85-2561.
District Court of Appeal of Florida, Fourth District.
October 8, 1986.
*853 Richard L. Jorandby, Public Defender and Ellen Morris, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee and Robert L. Teitler, Asst. Atty. Gen., West Palm Beach, for appellee.
STONE, Judge.
Appellant entered a plea of nolo contendere to the charge of burglary, and reserved the right to appeal the denial of a motion to suppress. We affirm.
The defendant, dressed in dark clothing, was observed by police officers at 1:20 a.m. rapidly riding a girl's bicycle, without lights, towards the exit of a residential Hobe Sound subdivision. When the defendant suddenly came upon the police vehicle he jerked his bike around, quickly, and headed in the opposite direction from that in which he had been pedaling. One of the officers also testified that he was cognizant of the fact that the defendant was a black male, and that to his knowledge, no black persons resided in that neighborhood.
The officers followed the appellant, pulled up next to him, and made inquiries as to his identity. Graham hesitated in giving his name, as if he were unsure of it, and acted nervous in telling them that he had no identification and that he was biking from West Palm Beach to Stuart but had gotten lost. While they were running a name check, one of the officers noted a bulge in the defendant's pocket, the existence of which is undisputed. His fear was *854 aroused that the defendant was armed. Although no weapon was found, the ensuing "pat down" resulted in the discovery of the evidence which defendant sought to suppress.
The defendant argues that the conduct of the officers constituted an invalid detention and stop without sufficient reasonable suspicion that a crime had been, or was about to be, committed. See Kearse v. State, 384 So.2d 272 (Fla. 4th DCA 1980); State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978); Mullins v. State, 366 So.2d 1162 (Fla. 1978), on remand, 371 So.2d 1113 (Fla. 3d DCA), cert. denied, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979). See also Levin v. State, 449 So.2d 288 (Fla. 3d DCA 1983), approved, 452 So.2d 562 (Fla. 1984).
However, not every "encounter" initiated by the police is a stop nor detention. See Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); State v. Smith, 477 So.2d 658 (Fla. 5th DCA 1985); State v. Grant, 392 So.2d 1362 (Fla. 4th DCA), rev. denied, 402 So.2d 610 (Fla. 1981).
This case is quite different from Kearse v. State, and the cases relied upon by appellant. In Kearse, the deputies observed appellant leaning into the passenger window of a vehicle, and as the deputies approached, the appellant briskly walked away. The deputies then ordered appellant to halt and turn around, placing his hands on the wall, in order to frisk him for weapons. Obviously, this was not a mere encounter between a police officer and a citizen for questioning purposes only. The deputies clearly used their show of authority to "seize" appellant, and he was not free to leave. These facts did not constitute the founded suspicion necessary to justify a valid stop.
The encounter initiated by the officers in this case involved no seizure of the defendant, no restraint on his liberty and no restriction of his freedom of movement prior to the fear of the officer being aroused. There is no evidence in the record, and the defendant does not contend, that the officers ever indicated to the defendant that he was not free to leave, nor that the defendant ever sought to leave nor otherwise refused to communicate with them. As such, this was a "mere encounter" between a citizen and a police officer which evoked voluntary cooperation on the part of the citizen, and was not a "seizure" within the meaning of the Fourth Amendment. State v. Rawlings, 391 So.2d 269 (Fla. 4th DCA 1980), rev. denied, 399 So.2d 1145 (Fla. 1981).
Here, we cannot say that the officers went beyond the scope of a permissible and reasonable encounter nor that they effectively seized the defendant prior to observing the bulge. In this case the officers were conducting and making a reasonable inquiry, which did not necessitate a founded suspicion, when one of them noticed the bulge which he feared was a weapon. It was not until the officer feared for his safety, which was reasonably aroused, that the defendant's freedom was restrained for the purpose of conducting the pat down. "If, during a lawful and extremely temporary encounter between a police officer and a citizen, probable cause is formulated to believe that the citizen is carrying a dangerous weapon, a frisk of that citizen's person is entirely justified to insure the safety of the police officer." State v. Rawlings at 270.
An officer may conduct a search for weapons under these circumstances, while he is engaged in an investigation, even though he does not have probable cause to believe that a crime has been committed, if he has reason to believe, based on articulable facts, that his safety is in danger. Terry v. Ohio. The test is whether a reasonably prudent person, under the circumstances which exist at the time of the encounter, would be warranted in such a belief. Terry v. Ohio. See also Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).
*855 The instant case is more like Carter v. State, 370 So.2d 1181 (Fla. 4th DCA), cert. denied, 378 So.2d 343 (Fla. 1979). In Carter, the officer stopped the defendant at five in the morning to ask him what he was doing and where he was going. While questioning him, the officer noticed a bulge in defendant's pocket, and so, the officer tapped the bulge with his hand. When asked what was in his pocket, the defendant said he had just shot a man. In Carter this court recognized that there are instances where legitimate contact between a police officer and a citizen may result in the citizen's arrest for a crime detected by the officer as a result of such contact. The facts in Carter constituted such an instance.
There is no bright line test to determine whether a search for weapons is justifiable as reasonable. Terry contemplates that the courts will carefully and prudently balance the need to protect the safety of an officer or others against the violation of a defendant's Fourth Amendment rights. The officer must be able to point to specific and articulable facts which, taken as a whole, reasonably warrant the intrusion. Terry v. Ohio. See also Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); State v. Webb, 398 So.2d 820 (Fla. 1981); Hochstetler v. State, 400 So.2d 974 (Fla. 4th DCA 1981), rev. denied, 413 So.2d 876 (Fla. 1982).
It should be noted that the testimony of the defendant in this case was limited to disputing whether the clothing he was wearing was all black or dark or whether there may not have been light lettering, a light hat, or light tennis shoes. Therefore, the testimony of the deputies was essentially undisputed.
The trial court concluded that the conduct of the officers in this case was reasonable under the facts and circumstances. This conclusion is supported by the evidence.
With respect to the additional issue raised by the appellant that the trial court erred in imposing costs, it appears from the record that the defendant was given notice and the opportunity to be heard in accordance with Jenkins v. State, 444 So.2d 947 (Fla. 1984). Therefore, there was no error.
We affirm.
GLICKSTEIN and WALDEN, JJ., concur.