573 So.2d 157 (1991)
Terrtric DOCTOR, Appellant,
v.
STATE of Florida, Appellee.
No. 88-3358.
District Court of Appeal of Florida, Fourth District.
January 16, 1991.
*158 Richard L. Jorandby, Public Defender, and Susan D. Cline, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Sylvia H. Alonso, Asst. Atty. Gen., West Palm Beach, for appellee.
GARRETT, Judge.
Appellant seeks review of the trial court's denial of his motion to suppress.
On July 4, 1988, several hours before the dawn's early light, members of a drug interdiction team were traveling northbound on I-95 in an undercover car. They became suspicious of a large car with dark tinted windows. The car was followed and they noticed it had a broken taillight. They radioed a BOLO to their backups, a state trooper and a deputy sheriff, who were in a marked police car. The trooper and the deputy also saw the broken taillight and made a traffic stop. The driver and appellant were asked to get out of the car. The trooper saw a "very large bulge" in the appellant's groin area and thought it might be a weapon. The trooper drew his revolver and yelled to the deputy, who placed appellant against the car and asked appellant to remove whatever made the bulge. When appellant failed to respond, the deputy frisked appellant and touched the bulge, which the deputy thought felt like peanut brittle. Based on his training and experience, the deputy knew the groin area to be a common place to carry cocaine and immediately concluded the bulge was rock cocaine, not a weapon. The deputy seized the cocaine rocks and arrested appellant for trafficking and possession. Appellant pled no contest to the trafficking charge and reserved the right to appeal the trial court's denial of his motion to suppress. The State dropped the possession charge.

THE TRAFFIC STOP
We affirm the trial judge's determination that the traffic stop was lawful. The officers had a founded or articulable suspicion to believe that a traffic infraction occurred in their presence. See State v. Cobbs, 411 So.2d 212 (Fla. 3d DCA 1982). They testified that they could see a white light shining from the car's left rear red taillight. The taillight was broken. See §§ 316.221 & 316.234, Fla. Stat. (1987). The officers' roles in the drug interdiction operation did not prevent them from enforcing the traffic laws, nor did it make the traffic stop a pretextual stop to conduct a drug investigation. When an officer stops a car for a minor traffic infraction of such a nature that any citizen committing it would be routinely stopped, the fact that the officer "possibly would not have stopped the *159 car but for further suspicion" does not render the stop "an unlawful `pretext' stop." State v. Kehoe, 498 So.2d 560 (Fla. 4th DCA 1986), approved, 521 So.2d 1094 (Fla. 1988) (quoting Bascoy v. State, 424 So.2d 80 (Fla. 3d DCA 1982)).

THE ENCOUNTER
We affirm the trial judge's determination that the officers' encounter with the appellant was lawful. When a police officer lawfully stops a car for a traffic infraction, his order to the driver or passenger to get out of the car is reasonable and permissible under the Fourth Amendment even though at the time of the stop the officer has no reason to suspect foul play from the particular driver or passenger. An officer's interest in protecting himself or a fellow officer against an unsuspected assault by a driver or passenger and against accidental injury from passing traffic is both legitimate and weighty and the intrusion into the driver's or passenger's personal liberty is de minimis. See Pennsylvania v. Mimms, 434 U.S. 106, 109-11, 98 S.Ct. 330, 332-33, 54 L.Ed.2d 331, 336-37 (1977).

THE SEARCH AND SEIZURE
We affirm the trial court's determination that the search and seizure was lawful. During a temporary encounter with a citizen, an officer, while engaged in an investigation, may conduct a limited protective search of that citizen for weapons, even without probable cause to believe that a crime has been committed. However, the officer, must have reason to believe, based on articulable facts, that his or another officer's safety is in danger. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Graham v. State, 495 So.2d 852, 854 (Fla. 4th DCA 1986). Under the circumstances that existed at the time of the encounter, the officers' fears for their safety were warranted since each reasonably believed that the bulge in appellant's pants might be a weapon. See Graham, 495 So.2d at 854.
The last sentence of section 901.151(5), Florida Statutes (1987), reads:
If [a stop and frisk] search discloses such a weapon or any evidence of a criminal offense it may be seized.
(Emphasis added). Our sister court in Dunn v. State, 382 So.2d 727, 730 (Fla. 2d DCA 1980), held that the sentence means:
[O]nly if in the course of a legal stop and frisk, a law enforcement officer removes from a suspect's possession an object which he believes might be a weapon, but finds instead of it being a weapon it is `evidence of an criminal offense,' he may still seize it.
We disagree. The wording of the sentence is clear without ambiguity and should be given its plain meaning. See Graham v. State, 472 So.2d 464, 465 (Fla. 1985). Our interpretation of the sentence is that an officer may seize any evidence of a criminal offense found as a result of a stop and frisk. We believe the following expressed the Second District's reason for its holding in Dunn, 382 So.2d at 729:
Perhaps the unspoken reason for limiting searches and seizures to objects thought to be weapons is that any other rule would have the practical effect of allowing law enforcement officers to search for contraband with less than probable cause on the ostensible premise of looking for weapons.
Again, we disagree with Dunn. Either an officer can or cannot articulate facts to warrant the frisking of a citizen for a weapon. Illegal weapons and drugs have permeated every phase of our society. It appears to us that almost all police investigations involve one or the other. A citizen who chooses to possess illegal drugs should suffer the legal consequences when the drugs are discovered as an officer lawfully frisks him for a weapon.
The Court of Appeals of Washington in State v. Broadnax, 25 Wash. App. 704, 612 P.2d 391, 393 (1980), appeal after remand, 29 Wash. App. 443, 628 P.2d 1332 (1981), reversed, 98 Wash.2d 289, 654 P.2d 96 (1982), upheld a drug seizure and stated:
Probable cause may be based upon knowledge gained through any of the senses. Logically, there is no difference in power of recognition between the use *160 of the tactile rather than the visual sense. An object may be perceived by touch equally as well as by sight.
It should be noted that this result squares with the principles of the plain view doctrine. That doctrine has three requirements:
a prior justification for intrusion, an inadvertent discovery of incriminating evidence, and immediate knowledge by police that they have evidence before them.
After remand from the Supreme Court of Washington, the court of appeals reaffirmed its holding in Broadnax and noted that "the officer identified the bulge ... at the time that he found it was not a weapon." But, the supreme court reversed the court of appeals and held that a frisk for weapons cannot be expanded to search for evidence of an independent crime because the sense of touch alone cannot establish probable cause to justify the initial intrusion. In Florida, absent other circumstances, the feeling of a soft object has also been held to be insufficient to provide probable cause since "there are an unlimited number of objects ... which `feel soft and malleable.'" State v. Rodriguez, 477 So.2d 1025, 1026 n. 1 (Fla. 3d DCA 1985).
The issue is whether the deputy could reasonably conclude that the bulge contained contraband. In Dunn the officer felt a hard cylindrical object in the suspect's right front shirt pocket that turned out to contain marijuana. In Broadnax the officer felt a soft balloon-like object in the suspect's left front shirt pocket that turned out to contain heroin. In Rodriguez the officer felt a soft object in the suspect's boot that turned out to be cocaine. We acknowledge that the touching by each of those officers did not reveal anything unusual about the actual contents of the objects. But, sub judice, once the deputy touched the bulge he knew that the actual contents of the bulge had the distinct feel of peanut brittle. "Knowledge gained by a police officer through the sense of touch is as meaningful as knowledge gained through [his] other senses." People v. Lee, 194 Cal. App.3d 975, 984, 240 Cal. Rptr. 32, 37 (1987). Based on his training and experience, the deputy concluded that cocaine rocks, not peanut brittle, caused the bulge in appellant's pants. What the deputy felt was the additional circumstance that established probable cause for him to believe that appellant's pants contained cocaine rocks. The Supreme Court explained the probable cause standard in Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 514 (1983):
It merely requires that the factors available to the officer would `warrant a man of reasonable caution in the belief' (citation omitted) that certain items may be contraband ... or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false. A `practical, nontechnical' probability that incriminating evidence is involved is all that is required. (citation omitted)... . `The process does not deal with hard certainties, but with probabilities... . Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' (citation omitted).
Such probable cause gave the deputy the right to seize the cocaine rocks as evidence of a criminal offense. See § 901.151(5), Fla. Stat. (1987).
Accordingly, we affirm the trial judge's denial of appellant's motion to suppress and certify that this opinion is in direct conflict with Dunn v. State, 382 So.2d 727 (Fla. 2d DCA 1980).
AFFIRMED.
DELL, J., concurs.
GLICKSTEIN, J., concurs specially with opinion.
GLICKSTEIN, Judge, concurring specially.
I agree that we should affirm because the officer's conduct was constitutionally permissible. The officers believed a bulge to be a weapon and felt it, only to discover that it felt like contraband, not a weapon. *161 There is a factual difference between this case and Gray v. State, 550 So.2d 540 (Fla. 4th DCA 1989), Dunn v. State, 382 So.2d 727 (Fla. 2d DCA 1980), Fraley v. State, 374 So.2d 1122 (Fla. 4th DCA 1979), and State v. Broadnax, 98 Wash.2d 289, 654 P.2d 96 (1982), which last mentioned case discusses the inappropriateness of the plain view doctrine when the original intrusion was not justified. The majority opinion does not approve touch, per se. Had it done so, I would have dissented. The touch occurred because of a concern for a weapon.