575 So.2d 779 (1991)
STATE of Florida, Appellant,
v.
Michael Edwin MAHOY, Appellee.
No. 90-1339.
District Court of Appeal of Florida, Fifth District.
March 7, 1991.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David G. Mersch, Asst. Atty. Gen., Daytona Beach, for appellant.
Gregory M. Wilson, Orlando, for appellee.
W. SHARP, Judge.
Pursuant to Florida Rule of Appellate Procedure 9.160, the county court certified the following question as one of great public importance:
PRIOR TO BEING ARRESTED IS THE DEFENDANT, STOPPED ON SUSPICION OF DRIVING UNDER THE INFLUENCE OF ALCOHOL, REQUIRED TO EXIT HIS VEHICLE IF SO ORDERED BY A LAW ENFORCEMENT OFFICER?
The county court ruled "no" on this issue, and suppressed evidence of a D.U.I. charge for which Mahoy (the defendant below) had been arrested. He also dismissed the D.U.I. charge because of the suppression order. We accepted jurisdiction and our answer to the certified question is "yes."
The record establishes that on July 7, 1989, at around 1:15 a.m., Mahoy was observed by an off-duty Orlando police officer, Latham, and an Orange County deputy, Lang, driving on the East-West Expressway in a dangerous and reckless manner. Mahoy was travelling without any lights in the "slow" lane, below the 55 m.p.h. speed limit, and was weaving into *780 the left lane and to the right onto the shoulder area of the road. A third police officer, Morales, arrived as a backup after Deputy Lang had stopped Mahoy and pulled him over.
Lang repeatedly ordered Mahoy to get out of his car. After being told by Lang and Latham what they had observed, Morales also repeatedly ordered Mahoy to exit his car. Mahoy waived his license out the driver's window, but refused to get out of his car. Morales and Lang then forcibly removed him. He was thereafter arrested for D.U.I. and later charged with resisting an officer without violence, carrying a concealed firearm and malicious mischief.
The trial court ruled that the officers unlawfully ordered Mahoy out of his car, and that the evidence for the D.U.I. offense was obtained as a result of his unlawful arrest and removal from the car. Therefore, that evidence was the "fruit of the poisonous tree" and should be suppressed. We disagree.
The United States Supreme Court has specifically held that once a motor vehicle has been lawfully detained for a traffic violation, a police officer may order the driver to exit the vehicle without violating the Fourth Amendment's proscription against unreasonable searches and seizures. New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986); Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Accord Stanley v. State, 559 So.2d 460 (Fla. 4th DCA 1990). This is so even though the police officer lacks any particularized reason to believe that the driver possesses a weapon or poses a threat. New York v. Class, 106 S.Ct. at 967. As the Supreme Court explained, this procedure simply balances the safety of the officer against intrusion into the driver's privacy:
`Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.' Terry v. Ohio, supra, 392 U.S. 1 at 23, 88 S.Ct. [1868] at 1881 [20 L.Ed.2d 889 (1968)]. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. `According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile... .' We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. United States v. Robinson, 414 U.S. 218, 234, 94 S.Ct. 467 [476], 38 L.Ed.2d 427 (1973). Indeed, it appears `that a significant percentage of murders of police officers occurs when the officers are making traffic stops.' Id. at 234, n. 5, 94 S.Ct. at 476 [n. 5].
The hazard of accidental injury from passing traffic to an officer standing on the driver's side of the vehicle may also be appreciable in some situations. Rather than conversing while standing exposed to moving traffic, the officer prudently may prefer to ask the driver of the vehicle to step out of the car and off onto the shoulder of the road where the inquiry may be pursued with greater safety to both.
Against this important interest we are asked to weigh the intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as de minimis. The driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a `serious intrusion upon the sanctity of the person,' but it hardly rises to the level of a `petty indignity.' Terry v. Ohio, supra, 392 U.S. at 17, 88 S.Ct. at 1877. What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.
Pennsylvania v. Mimms, 98 S.Ct. at 333.
Further, our sister court in Doctor v. State, 573 So.2d 157 (Fla. 4th DCA 1991), recently relied on Mimms in upholding an *781 arrest after a valid traffic stop. In that case, the evidence of the crime did not appear until after the driver had been ordered to exit the car, and did so on his own power. The court said:
We affirm the trial judge's determination that the officers' encounter with the appellant was lawful. When a police officer lawfully stops a car for a traffic infraction, his order to the driver or passenger to get out of the car is reasonable and permissible under the Fourth Amendment even though at the time of the stop the officer has no reason to suspect foul play from the particular driver or passenger. An officer's interest in protecting himself or a fellow officer against accidental injury from passing traffic is both legitimate and weighty and the intrusion into the driver's or passenger's personal liberty is de minimis. See Pennsylvania v. Mimms, 434 U.S. 106, 109-11, 98 S.Ct. 330, 332-33, 54 L.Ed.2d 331, 336-37 (1977).
In the present case, Mahoy was stopped by Deputy Lang and ordered to exit his vehicle by both Lang and Morales. Deputy Lang observed Mahoy driving his vehicle in the dark without any lights and observed the vehicle weaving outside its lane of traffic. These facts are sufficient to justify a stop of Mahoy for suspicion of reckless driving,[1] careless driving,[2] or driving under the influence of alcohol.[3] Officer Morales, who received this information from Deputy Lang before ordering Mahoy to exit his vehicle, likewise was justified in detaining Mahoy. See State v. Eldridge, 565 So.2d 787 (Fla. 2d DCA 1990) (deputy who observed defendant's violation of driving under the influence had the right to summon assistance of another deputy who in turn had the authority to make an arrest based on the first deputy's observations and report).[4] Thus, under Pennsylvania v. Mimms, both officers had the authority to order Mahoy to exit his vehicle. Upon his refusal to comply, the officers could physically remove him. Given his active resistance, the officers had probable cause to charge Mahoy with resisting an officer without violence, a violation of section 843.02,[5] and D.U.I. based on his appearance and behavior before and after the stop.
Accordingly, the county court should not have suppressed the evidence nor dismissed the D.U.I. charge against Mahoy. We answer the certified question "yes;" and we quash the suppression and dismissal orders and remand for further proceedings.
CERTIFIED QUESTION ANSWERED; dismissal and suppression orders QUASHED; REMANDED.
HARRIS, J., concurs.
DAUKSCH, J., concurs in conclusion only without opinion.
NOTES
[1] § 316.192, Fla. Stat. (1989).
[2] § 316.1925, Fla. Stat. (1989).
[3] § 316.193, Fla. Stat. (1989).
[4] Section 901.18 provides that a police officer making a lawful arrest may command the aid of persons he deems necessary to make the arrest and that a person so commanded shall have the same authority to arrest as that police officer.
[5] Section 843.02 provides that whoever shall resist, obstruct, or oppose any police officer in the lawful execution of any legal duty without doing violence to the person of the officer is guilty of a misdemeanor in the first degree. It also appears that the officers had probable cause to charge Mahoy with a violation of section 316.072(3) which provides that it is unlawful and a misdemeanor of the second degree for any person to willfully fail or refuse to comply with any lawful order or direction of any law enforcement officer.