[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12293

_____

D.C. Docket No. 2:16-cv-00814-SPC-MRM

ANITA ANDREWS,

Plaintiff – Appellant,

versus

BRANDON MARSHALL, et al.,

Defendants – Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 3, 2021)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

MARTIN, Circuit Judge:

On election night in November 2012, Plaintiff, Anita Andrews, was a

passenger in a pickup truck when police stopped that truck on account of a broken

headlight.  In the back of the truck were a number of campaign signs that Ms. Andrews had collected after the polls closed.  The officers suspected her of having stolen the signs.  The encounter ended with Ms. Andrews's arrest and her detention at a county jail.

Ms. Andrews brought suit pursuant to 42 U.S.C. § 1983 against Defendants, Deputy Brandon Marshall; Sergeant Robert Kizzire; Carmine Marceno in his official capacity as Sheriff of Lee County, Florida; and Corizon Health, Inc. ("Corizon Health").  She alleged false arrest and made other claims as well.  Now before us is Ms. Andrews's appeal of the District Court order granting summary judgment to the Defendants.  After careful consideration, we affirm.

## I.

### A. Factual Background

On election day, November 7, 2012, Ms. Andrews worked as a "political campaign worker" in Lee County, Florida.  As part of her job, she checked on poll workers and brought them food and water.  After the polls closed, Ms. Andrews and Keith O'Bryant, her fiancé, drove to various polling locations to pay poll workers.  They also collected campaign signs at the last polling location they visited.  Ms. Andrews and Mr. O'Bryant then drove home and to a post-election party.  Ms. Andrews removed additional campaign signs as they drove.  Because

2

she believed signs left over after the close of polls were trash, Ms. Andrews thought collecting them was a "service to the community."

As Ms. Andrews and Mr. O'Bryant returned from the party at approximately 2:00 A.M., Deputy Marshall observed their vehicle traveling on Highway 41. Deputy Marshall noticed that one headlight was out and initiated a traffic stop. Mr. O'Bryant was in the driver's seat and Ms. Andrews was in the front passenger seat.

Deputy Marshall and Mr. O'Bryant initially had a "cooperative" conversation. But the interaction took a turn when Deputy Marshall asked why, if Mr. O'Bryant had a Virginia driver's license, he was in Florida. He asked whether Mr. O'Bryant and Ms. Andrews were "sleeping together." Ms. Andrews interjected that Mr. O'Bryant did not have to answer those questions, at which point Deputy Marshall engaged with Ms. Andrews. Deputy Marshall asked for her identification, which Ms. Andrews said she did not have with her.

As Deputy Marshall walked back to his vehicle to run Mr. O'Bryant's information, he noticed the campaign signs in the bed of the pickup truck.[1] He began asking Ms. Andrews about the signs, which she insisted she was authorized to possess. The parties dispute the precise content and sequence of the conversation, but they agree that Ms. Andrews repeatedly insisted upon her right

---

[1] All told, there were 67 signs in the back of the truck.

3

not to state her name because she was not being investigated for a crime. Deputy Marshall called his supervisor, Sergeant Kizzire. Upon his arrival, Sergeant Kizzire also questioned Mr. O'Bryant about the signs. By this time, six patrol cars were on the scene. Eventually, Ms. Andrews and Mr. O'Bryant were arrested.

Following her arrest, Ms. Andrews was detained at the Lee County Jail, where she says she suffered mistreatment. Specifically, she says that Corizon Health, which Lee County contracted with to provide medical care to people at the jail, refused her requests for aspirin, water, and a blanket. The parties dispute what underlying medical conditions Ms. Andrews has, but Andrews says she fainted several times and hit her head on the concrete floor during her stay at the jail. Ms. Andrews was committed to the mental health unit pursuant to Florida's Baker Act, which allows for the temporary treatment and detention of people with a mental health need. See Fla. Stat. §§ 394.451; 394.4625; 394.463. She was released after two days in custody.

Ms. Andrews and Mr. O'Bryant were charged with the crime of loitering and prowling. Those charges were ultimately dismissed.

4

B. Procedural History

Ms. Andrews brought this action in 2016. Defendants filed motions to dismiss, which the District Court granted in part and denied in part.[2] Ms. Andrews amended her complaint, which is the pleading we evaluate here. She brought claims under § 1983, alleging false arrest; failure to supervise, train, or take corrective action; retaliation; excessive force; and deliberate indifference. She also brought claims under state law, alleging assault and battery; intentional infliction of emotional distress; breach of contract; and negligent hiring, retention, and supervision.

The District Court entered judgment for Defendants on all claims. This is Ms. Andrews's appeal.

**II.**

We review de novo a grant of summary judgment. Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1303 (11th Cir. 2016). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a). In making this determination, we view all evidence and make all reasonable inferences in favor of the party opposing summary judgment. Pennington v. City of Huntsville, 261 F.3d

---

[2] Some of the Defendants appealed the District Court's denial of qualified immunity at the motion to dismiss stage. A panel of this Court affirmed that decision. See Andrews v. Scott, 729 F. App'x 804, 812 (11th Cir. 2018) (per curiam) (unpublished).

1262, 1265 (11th Cir. 2001). We may affirm the grant of summary judgment on any adequate ground for doing so. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1117 (11th Cir. 1993).

## III.

Ms. Andrews asserts five grounds on appeal. She challenges the District Court's grant of summary judgment to: (1) Deputy Marshall, Sergeant Kizzire, and Sheriff Marceno on the false arrest and retaliation claims; (2) Sergeant Kizzire and Sheriff Marceno on the excessive force and state law assault and battery claims; (3) Deputy Marshall and Sergeant Kizzire on the intentional infliction of emotional distress claim; (4) Sheriff Marceno and Corizon Health on the deliberate indifference claim; and (5) Corizon Health on the breach of contract claim. We address each in turn.

A. False Arrest and Retaliation Claims Against Deputy Marshall, Sergeant Kizzire, and Sheriff Marceno

Ms. Andrews argues the District Court erred in granting summary judgment to Deputy Marshall, Sergeant Kizzire, and Sheriff Marceno, sued in his official capacity, on her false arrest and retaliation claims. Her argument fails for the reasons that follow.

A warrantless arrest without probable cause violates the Fourth Amendment and provides the basis for a § 1983 claim. Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). Likewise, arrest in retaliation for exercising one's First

6

Amendment rights may also provide a basis for liability under § 1983. See Redd v. City of Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998). However, the existence of probable cause is an absolute bar to both claims. Ortega, 85 F.3d at 1525; Redd, 140 F.3d at 1383.

Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (quotation marks omitted).

Even if an officer did not have actual probable cause, he is still entitled to qualified immunity if he had "arguable probable cause." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997). Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Because only arguable probable cause is needed, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Montoute, 114 F.3d at 184. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to

7

immunity." Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536 (1991) (per curiam) (quotation marks omitted).  The existence of arguable probable cause for any arrestable offense provides qualified immunity.  Devenpeck v. Alford, 543 U.S. 146, 153–55, 125 S. Ct. 588, 593–94 (2004) (holding that an arrest is constitutionally valid as long as the circumstances known to the officers, viewed objectively, give probable cause to arrest for any crime, even if probable cause was lacking as to the announced charges).

The District Court found the officers had probable cause to arrest Ms. Andrews for several offenses: loitering and prowling, theft, trespassing, and resisting an officer without violence.  We may affirm on any basis, see Fitzpatrick, 2 F.3d at 1117, and conclude that the officers had arguable probable cause to arrest Ms. Andrews for petit theft of campaign signs.

Whether there is arguable probable cause depends on the elements of the offense and the operative fact pattern.  Skop v. City of Atlanta, 485 F.3d 1130, 1137–38 (11th Cir. 2007).  Thus, we look to the elements of petit theft.  Under Florida law:

> A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.

8

      (b) Appropriate the property to his or her own use or to the
      use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1).

Ms. Andrews argues she was authorized to remove and collect the 67 campaign signs she had in the bed of the pickup truck. She claims the signs were taken from public places, and argues that, "given the general public perception that leftover campaign signs in public rights-of-way are a nuisance, i.e., trash," her removal of them was "simply a service to the community." However, based on this record, we cannot say the District Court erred in granting summary judgment to Defendants.

Most importantly, the relevant state statutory regime authorizes the removal of campaign signs by certain entities, and Ms. Andrews has not produced evidence in support of her belief that she had permission to collect the signs. Florida law specifies that political candidates are responsible for removing signs after the post-election deadline set by localities. Fla. Stat. § 106.1435(1), (5). In Lee County, where the traffic stop occurred, candidates have ten days after an election to collect signs. See Lee Cnty. Land Dev. Code 30-151(4)b. Florida law further provides that if signs are "not removed within the specified period, the political subdivision or governmental entity has the authority to remove such advertisements and may charge the candidate the actual cost for such removal." Fla. Stat. § 106.1435(2). Ms. Andrews, however, did not work for a particular political campaign or the

local government.  And she has not provided any authority indicating that, absent the referenced statutory authorization to collect campaign signs, she could have done so lawfully.  Instead, Ms. Andrews appears to have taken the signs under a mistake of law.  See Fla. Stat. § 812.014(3)(a) (theft of any property not otherwise specified under subsection 2 of the statute is a petit theft and a misdemeanor of the second degree); cf. Information, State v. Good, No. 14-mm-3394 (Fla. Hernando County Ct. Oct. 23, 2014) (charging defendant with petit theft under $100 for taking campaign signs from private property in violation of Florida Statutes §§ 812.014(1) and 812.014(3)(a)).

On these facts, the officers could have reasonably believed that Ms. Andrews took campaign signs without authorization, which constitutes a petit theft under Florida law.  Thus the existence of arguable probable cause to arrest Ms. Andrews for petit theft is a bar to her false arrest and retaliation claims.[3]  Manners v. Cannella, 891 F.3d 959, 969 (11th Cir. 2018) ("[I]t is now settled law that there is probable cause for a warrantless custodial arrest even for a seemingly insignificant crime."); Ortega, 85 F.3d at 1525; Redd, 140 F.3d at 1383.

---

[3] Even if Ms. Andrews were correct that the officers had other motives in arresting her, their subjective intent is not relevant to the arguable probable cause inquiry.  See Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010) ("The standard [for arguable probable cause] is an objective one and does not include an inquiry into the officer's subjective intent or beliefs.").

10

Because we conclude arguable probable cause existed for one criminal offense, we need not address the existence of arguable probable for any other offense.[4]  See Fitzpatrick, 2 F.3d at 1117 (noting that this Court may affirm the grant of summary judgment on any ground).  And because Deputy Marshall and Sergeant Kizzire are entitled to summary judgment on these claims, Sheriff Marceno cannot be liable in his official capacity either.  See City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986) ("[N]either Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm.").

Therefore, we affirm the grant of summary judgment to Deputy Marshall, Sergeant Kizzire, and Sheriff Marceno on the false arrest and retaliation claims.

---

[4] We do not reach any other potential grounds justifying the arrest, but we are skeptical that Florida's loitering or prowling statute could supply probable cause for Ms. Andrews's arrest. See Fla. Stat. § 856.021(1) ("It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.").  Charging a person with "loitering or prowling" as she and her fiancé drive home at night on a highway seems more befitting the fictional movie "Minority Report" than modern-day America.  See Minority Report (20th Century Fox 2002).

11

B. Excessive Force and State Law Assault and Battery Claims Against Sergeant Kizzire and Sheriff Marceno

Ms. Andrews argues the District Court erred in granting summary judgment to Sergeant Kizzire and Sheriff Marceno, sued in his official capacity, on the excessive force and state law assault and battery claims.  According to Ms. Andrews, the officers are not entitled to qualified immunity because she was not resisting arrest and posed no threat to the officers.

Officers are entitled to qualified immunity on an excessive force claim "unless application of the standard would inevitably lead every reasonable officer to conclude the force was unlawful."  Slicker v. Jackson, 215 F.3d 1225, 1232 (11th Cir. 2000) (quotation marks omitted and alterations adopted).  The "'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989).  A court should also consider "the severity of the crime, whether the suspect posed an immediate threat, and whether the suspect was resisting or fleeing."  Slicker, 215 F.3d at 1233 (quotation marks omitted and alterations adopted).

To defeat qualified immunity, Ms. Andrews must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established

12

at the time of the alleged violation." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). We can address either prong first. Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009). "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted).

Even if we assume that Sergeant Kizzire and Sheriff Marceno's use of force violated the Constitution, Ms. Andrews cannot demonstrate that the law was so clearly established as to give Kizzire and Marceno fair warning that the force used here would have violated the Fourth Amendment.

We review the record in the light most favorable to Ms. Andrews as the party opposing summary judgment. See Pennington, 261 F.3d at 1265. These officers opened the passenger door and unfastened her seatbelt only after repeatedly asking her to get out of the truck. Ms. Andrews says she was "drug out" of the truck, frisked, and handcuffed tightly, which resulted in injury to her wrists, a "swollen" upper arm, and a bruise to the outside of her right thigh. She did not require medical treatment for her injuries.

13

Under this Circuit's precedent, it is not clearly established that the amount of forced used against Ms. Andrews is unlawful.  See, e.g., Croom v. Balkwill, 645 F.3d 1240, 1252–53 (11th Cir. 2011) (per curiam) (officer entitled to qualified immunity on excessive force claim where officer held a woman to the ground with his foot or knee in her back for ten minutes); Gold v. City of Miami, 121 F.3d 1442, 1446–47 (11th Cir. 1997) (per curiam) (same, where handcuffs resulted in skin abrasions for which plaintiff did not seek medical treatment); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559–60 (11th Cir. 1993) (same, where officers placed plaintiff in a chokehold later requiring medical treatment and pushed plaintiff against a wall).  And in light of the facts and circumstances facing Sergeant Kizzire, including Ms. Andrews's refusal to exit the vehicle despite repeated requests, we cannot say every reasonable officer would conclude the amount of force used to effectuate the arrest was unlawful.[5]  Graham, 490 U.S. at 397, 109 S. Ct. at 1872; Slicker, 215 F.3d at 1232.

Additionally, Ms. Andrews's state law assault and battery claims fail for the same reason her excessive force claim fails.  See City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d Dist. Ct. App. 1996) ("A battery claim for excessive force

---

[5] Because Ms. Andrews's excessive force claim against Sergeant Kizzire fails, it also fails against Sheriff Marceno.  See Heller, 475 U.S. at 799, 106 S. Ct. at 1573.

14

[under Florida law] is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances.").

Therefore, we affirm the grant of summary judgment to Sergeant Kizzire and Sheriff Marceno on the excessive force and state law assault and battery claims.

C. Intentional Infliction of Emotional Distress Claim Against Deputy Marshall and Sergeant Kizzire

Ms. Andrews argues the District Court erred in granting summary judgment to Deputy Marshall and Sergeant Kizzire on the intentional infliction of emotional distress ("IIED") claim.

To prove IIED under Florida law, a plaintiff must demonstrate: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." Moore v. Pederson, 806 F.3d 1036, 1053 (11th Cir. 2015).

Ms. Andrews's IIED claim is based on her treatment prior to her transport to the jail. Again, reading the record in the light most favorable to Ms. Andrews, she was "drug out" of the truck, frisked, and handcuffed tightly, resulting in injury to her wrists, a "swollen" upper arm, and a bruise to the outside of her right thigh. But beyond these facts, Ms. Andrews has not produced any evidence that the officers' conduct goes "beyond all possible bounds of decency" and is "atrocious,

15

and utterly intolerable in a civilized community." Liberty Mut. Ins. Co. v.

Steadman, 968 So. 2d 592, 594–95 (Fla. 2d Dist. Ct. App. 2007) (quotation marks

omitted).  Nor has Ms. Andrews produced evidence showing that the officers'

conduct caused severe emotional distress.

Therefore, we affirm the grant of summary judgment to Deputy Marshall

and Sergeant Kizzire on the IIED claim.

D. The Deliberate Indifference Claim Against Sheriff Marceno and Corizon
Health

Next, Ms. Andrews argues that Sheriff Marceno and Corizon Health were

deliberately indifferent to her medical needs at the Lee County Jail.[6]  She advances

a theory of municipal liability against Corizon Health and Sheriff Marceno, in his

official capacity, pursuant to Monell, 436 U.S., 98 S. Ct.  We conclude, however,

that Ms. Andrews has failed to establish municipal liability, because she does not

point to any official policy or practice that caused her injuries.

"A plaintiff seeking to impose liability on a municipality for injuries its

employees or agents have inflicted must show that the plaintiff suffered injuries

inflicted pursuant to an official government policy or custom."  Brown v. City of

Hialeah, 30 F.3d 1433, 1438 (11th Cir. 1994).  The plaintiff "must identify a

---

[6] "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009).

municipal policy or custom that caused [her] injury." Grech v. Clayton County, 335 F.3d 1326, 1329 (11th Cir. 2003) (quotation marks omitted). A plaintiff may establish a policy in one of two ways: by "identify[ing] either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." Id.

A single incident of unconstitutional actions can be enough to establish municipal liability. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24, 105 S. Ct. 2427, 2436 (1985). But the plaintiff must show that a final policymaker (1) ratified unconstitutional conduct, or (2) delegated policymaking authority to a subordinate such that the subordinate's discretionary decisions are not constrained or subject to further review. See Hoefling v. City of Miami, 811 F.3d 1271, 1279–80 (11th Cir. 2016) (ratification); Mandel v. Doe, 888 F.2d 783, 792–94 (11th Cir. 1989) (delegation). A private entity like Corizon Health can be subject to liability under § 1983 when it "performs a function traditionally within the exclusive prerogative of the state." Craig v. Floyd County, 643 F.3d 1306, 1310 (11th Cir. 2011) (quotation marks omitted). This includes contracting with the county to provide medical services to people detained at the jail, because it becomes "the functional equivalent of the municipality" under § 1983. Id. (quotation marks omitted).

17

For this claim, Ms. Andrews argues that the denial of water, aspirin, and a blanket, as a single incident, are enough to establish municipal liability against Sheriff Marceno and Corizon Health for deliberate indifference. However, Ms. Andrews's assertion of municipal liability is conclusory, insofar as she fails to explain how the actions she complains of were ratified or delegated by a final policymaker.

For starters, Ms. Andrews has not articulated any policy or custom she believes Sheriff Marceno or Corizon Health ratified. Nor has she provided any evidence in support of Sheriff Marceno's liability, which she must at the summary judgment stage. See Hoefling, 811 F.3d at 1280 (noting that a plaintiff must "identify (and provide proof concerning) a single final policymaker in order to survive summary judgment"). Because she has not provided any such evidence, her claim against Sheriff Marceno in his official capacity fails as a matter of law. See, e.g., Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (noting that conclusory assertions are insufficient to withstand summary judgment); Sammons v. Taylor, 967 F.2d 1533, 1544–45 & n.5 (11th Cir. 1992) (same).

As to Corizon Health, Ms. Andrews has also failed to produce evidence showing municipal liability. Ms. Andrews relies on news articles detailing Corizon Health's poor performance in prisons and jails generally. These news

articles, however, do not withstand summary judgment.  Most glaringly, they do not address the kinds of injuries Ms. Andrews says she experienced.  While the articles indicate that Corizon Health engaged in cost cutting, Ms. Andrews asserts that the poor medical treatment she received was in response to her refusal to provide her name to medical staff, a predicament unrelated to the cost of services referenced in the articles.  Thus, as with her claim against Sheriff Marceno, Ms. Andrews has failed to provide any evidence to establish municipal liability against Corizon Health.[7]  See Leigh, 212 F.3d at 1217 (11th Cir. 2000); Sammons, 967 F.2d at 1544–45 & n.5.

Therefore, we affirm the grant of summary judgment to Sheriff Marceno and Corizon Health on the deliberate indifference claim.

---

[7] Relevant to Ms. Andrews's deliberate indifference claim are her underlying conditions, which are disputed by the parties.  Ms. Andrews submitted an expert report that explains that Andrews has had episodes of loss of consciousness and headaches since early childhood.  To manage her condition, she was instructed to stay hydrated, take aspirin as an anticoagulant because she may be at risk for blood clotting, and avoid extreme temperatures.  Ms. Andrews and the expert report both refer to the condition as her having "thick blood."  She argues these conditions made it important for her to have water, aspirin, and a blanket at the jail.

Corizon Health's expert reviewed Ms. Andrews's medical records and opined that Andrews has various psychiatric disorders, including "Somatic Symptom Disorder," "Histrionic Personality Disorder," and "Psychotic Disorder," and that she does not have a condition known as "thick blood."

Even accepting that Ms. Andrews has the medical conditions she asserts, she does not survive summary judgment on her deliberate indifference claim because she does not provide any evidence showing a policy or practice behind her injuries.

19

E. The Breach of Contract Claim Against Corizon Health

Finally, Ms. Andrews argues she was a third-party beneficiary to the contract between Lee County and Corizon Health, and that the medical treatment she received breached that contract.

To succeed as a third-party beneficiary on a breach of contract claim under Florida law, the plaintiff must prove "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach." Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc., 813 F.3d 1333, 1338 (11th Cir. 2015) (per curiam) (quoting Found. Health v. Westside EKG Assocs., 944 So. 2d 188, 195 (Fla. 2006)).

Ms. Andrews argues that she was an intended third-party beneficiary of the contract between Lee County and Corizon Health. The express language of the contract, however, says otherwise. The contract states:

> [Corizon Health and Lee County] agree that they have not entered into this [contract] for the benefit of any third person or persons, and it is their express intention that the [contract] is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third-party beneficiaries hereof.

The contract's terms indicate that Lee County and Corizon Health did not intend for a third party like Ms. Andrews to benefit from their agreement.

20

Moreover, Corizon Health provided an affidavit in support of this interpretation, explaining that the parties did not intend to include non-parties to the agreement as third-party beneficiaries.  Ms. Andrews has not provided any evidence rebutting this affidavit.[8]  And because Ms. Andrews is not a third-party beneficiary to the contract, no triable issue remains on the breach of contract claim.

Therefore, we affirm the grant of summary judgment to Corizon Health.

\*       \*       \*

We affirm the grant of summary judgment to Defendants on all claims.

**AFFIRMED.**

---

[8] Contrary to Ms. Andrews's assertions, nothing in the Federal Rules of Civil Procedure prevents Corizon Health from providing an affidavit that is self-serving.  See United States v. Stein, 881 F.3d 853, 856 (11th Cir. 2018) (en banc).

21

NEWSOM, Circuit Judge, concurring in part and concurring in the judgment:

The main opinion concludes that arguable probable cause existed for Andrews's arrest. *See* Maj. Op. at 7–11. I agree. If it were up to me, though, I would rest the decision on the ground that the officers had arguable probable cause to arrest Andrews not for petit theft, but for a different offense—resisting an officer without violence under Florida law.

Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the [officer] *could have believed* that probable cause existed to arrest." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (emphasis in original) (quotation marks omitted). This inquiry "naturally depends on the elements of the alleged crime." *Id.* Under Florida law, the crime of resisting an officer without violence, *see* Fla. Stat. § 843.02, comprises two elements: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009).

Both elements are satisfied here. As an initial matter, no one disputes that Fla. Stat. §§ 316.217(1) and 316.220(1) authorized Deputy Marshall to pull O'Bryant over for driving a vehicle with a broken headlight. Moreover, the Supreme Court has made clear that police officers may order not only drivers but

22

also passengers out of the vehicle during a traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). Deputy Marshall was therefore engaged in the lawful execution of a legal duty when he asked Andrews to exit the vehicle. Further, according to Andrews's own testimony, she refused multiple requests to exit the vehicle, which constitutes obstruction of or resistance to a lawful duty. *See Rodi v. Rambosk*, No. 13-cv-00556, 2014 WL 1876218, at *5 (M.D. Fla. May 9, 2014); *Billips v. State*, 777 So. 2d 1094, 1095 (Fla. Dist. Ct. App. 2001); *State v. Mahoy*, 575 So. 2d 779, 781 (Fla. Dist. Ct. App. 1991).

A reasonable officer surely could have believed that Andrews violated the law by refusing multiple lawful requests to get out of the car. Accordingly, the district court correctly concluded that arguable probable cause existed for Andrews's arrest and granted summary judgment on her false-arrest and retaliation claims.

23